Sallie J. Miner and Milo Miner v. Philo P. Miner
and Rena L. Miner (original bill), and
Philo P. Miner and Rena L. Miner
v. Sallie J. Miner and Milo
Miner (cross-bill).

*Deed—Consideration—Life-support of grantors—Reformation of
contract.*

·Complainants filed a bill to set aside a conveyance to the defend-
ants, absolute in form, but made in consideration of defend-
ants' agreement to provide for their care and support, which
was evidenced by a separate contract, and the defendants
filed a cross-bill to reform the contract. The decree of the
lower court is substantially affirmed, which provided for the
payment of $150 per year to complainants for their support
during their joint lives, and of $75 per year during the life of
the survivor, and gave the defendants the use, occupation,
and control of the land and property in dispute so long as
the terms of the decree were performed, and provided for a
sale in case of non-performance.

Appeal from Saginaw. (Edget, J.) Argued March 8,
.1892. Decided March 18, 1892.

Bill to set aside a conveyance made in consideration of
the care and support of complainants. Complainants
.appeal. Decree substantially affirmed. The facts are
.stated in the opinion.

*Byron A. Snow,* for complainants.

*Trask & Smith,* for defendants.

McGrath, J. This is a bill filed to set aside a con-
·veyance made to defendants in 1889 in consideration of
an agreement for care and support. The conveyance
¯was absolute, but at the same time a contract was entered

into and conditioned for care and support. Defendants filed a cross-bill, praying for the reformation of the contract.

The opinion of the learned circuit judge who heard the causes below sets forth so fully and forcibly the facts and our conclusions therefrom that we adopt it:

"The proofs taken in these causes disclose that the complainants, Milo and Sallie J., are husband and wife, the former being 75 and the latter 70 years of age; that the defendant Philo P. is the son of the complainant Milo, by a former wife, and the defendant Rena L. is the wife of said Philo P.

"That in 1888 the complainants, Milo and Sallie J., resided in the township of Brant, Saginaw county, upon land owned by Sallie J., consisting of upwards of 100 acres, only about 8 or 10 acres of which was cleared in fit condition for the raising of crops; that the parties resided in a log house of limited size, situated upon the premises; that they did not derive sufficient income from the property to support them, but depended in a measure upon interest moneys which Milo Miner received from various loans which he had made.

"That the defendants, Philo P. Miner and wife, resided at LaGrange, Indiana, his business being that of a mason; that in the year 1888 Milo Miner was taken seriously ill, and the defendant Philo, upon being telegraphed, came to Brant, and from that time more or less active negotiations were carried on between the parties, looking toward the removal of the son from LaGrange to the farm in Brant, for the purpose of being near and taking care of the complainants for the remainder of their lives, the proposition being made substantially by the complainants to convey to him and his wife jointly the farm, and take back a lease for the life of the complainants, conditioned for their support and maintenance; that the defendant Philo P. in fact remained on the farm in Brant during the winter of 1888-89, and commenced to make some permanent improvements, with the expectation of eventually removing there, and carrying out the purpose of the parties. Timber was cut and lumber sawed out to the amount of some 29 or 30 thousand feet, with a view to build an addi-

tional house to accommodate one of the families, and provide for separate household establishments.

"In the spring of 1889 the defendant Philo P. appears to have gone back to La Grange, and there sold the homestead owned by him for some $1,500, and, before the terms of the agreement between himself and his parents had been settled in detail, removed in June, 1889, with his family, consisting of himself, wife, and three children, direct to the farm. No separate house had been built, and as a matter of necessity as well as consent he moved at once into a joint occupation of the single dwelling on the premises; and it was shortly determined by all parties concerned that his means had best be saved for the clearing of the land and the making of other like improvements upon the property, so as to render it productive, rather than expended in the construction of the dwelling-house; and the result was, the parties continued to reside together until some time in January, 1890, practically as one family.

"July 1, 1889, a deed was drawn up and executed by the complainants conveying to the defendants jointly, as husband and wife, the entire farm; and at the same time, as a part of the same transaction, there was jointly executed by all the parties a contract conditioned for the care and support by the defendants of the complainants during the period of their natural lives, and a copy of which is set out at large in the bill. Both papers were duly acknowledged and recorded. Thereafter, Philo P. proceeded to clear the land, erect fences, dig ditches, and make other like improvements, expending entire in permanent improvements the sum of $541 down to the present date.

"Early in December, 1889, the complainant Sallie J. and the defendant Rena L. had an altercation, which resulted in the complainant Sallie J. refusing to longer take her meals with the family; and some weeks later, in January, 1890, the complainants, with the entire acquiescence of the defendants, moved to St. Charles, and there resided until the month of March, 1890, when they removed to Sturgis, Michigan, and afterwards to Auburn, Indiana, where they have since remained with relatives. Defendants recognized their continued obligation to support the complainants at St. Charles, as well as upon the farm, and did contribute to their • support

during the period extending from January to March, while they so resided at St. Charles, but shortly after their removal to Sturgis, on demand being made for support, refused to grant the same, except to a very limited extent, upon the ground that they were not bound to care for or support the complainants except upon the farm in Brant. An interchange of communication followed, which it is needless to restate. It is sufficient to say, of all that afterwards happened, that the differences between the parties became more marked and their estrangement more complete with time, and as a result such a state of hostility exists between the complainants and the defendants that it is not believed that they can again live together in peace and harmony as one family.

"It appears that there is owing the complainant Milo Miner by the defendant Philo P. the sum of $363, with interest at four per cent. from 1888, for moneys loaned, independent of the farm transaction.

"Complainants now file their bill against the defendants, praying substantially for an accounting, offering to pay what may be equitable for the permanent improvements put upon the place by the defendants, and that the deed of July 1 may be canceled, and the personal property embraced in the contract of that date be redelivered to them. The defendants, in their cross-bill, insist that the contract of July 1, 1889, does not express the agreement of the parties, and pray that the same may be reformed by transferring to them the right of control of the farm, limiting the right of complainants to support while they shall reside at the farm; and also requiring the complainants to assist to the extent which might be necessary for their support by the use of the interest moneys of said Milo Miner.

"The contract into which the parties entered on the 1st of July, 1889, contemplated intimate personal relations, was made between the father and mother on one side, and the son and his wife upon the other, under the expectation that it would continue for life. It imposed the duty upon the defendants to care for the complainants in health and sickness, not as strangers might do, but as children would be expected to care for parents who had arrived at that age where they had ceased to be able to properly take care of themselves. The habits and temperament of each were known to the

others at the time of entering into the contract, and the parties must be assumed to have contracted with reference to them; and it was their plain duty to mutually bear and forbear to the end that harmony might be preserved, and the substantial purpose of the contract met for the full period of the life of each of the complainants. This has not been done, either on the part of complainant Sallie J. or of the defendant Rena L. Both have been responsible for the present estrangement, and the court will not undertake to apportion the wrong between them. We are satisfied that the differences have become so pronounced that no benefit could come to either party, and great wrong might be done, especially to the complainants, if the court should undertake to decree anything in the nature of a specific performance of this contract. We regard it as a case where all the essential elements of the contract are practically destroyed when mutual confidence and respect have ceased.

"It remains, therefore, to determine what the equities of the several parties require. We think that the complainants, in view of the existing relations of the parties, are entitled to receive their support and maintenance, not upon the farm, but at any proper place which they may choose for their residence; but the expense of such support and maintenance should be limited to what may be the fair cost of the same if furnished upon the farm. This I find to be $150 per year, exclusive of the interest moneys, which it was anticipated complainants would make use of to assist in their support. Defendants are entitled to have the contract so reformed as to provide for the possession and control of the property, real and personal, which they received under the deed and contract of that date, so long as they observe and perform their obligations to the complainants; they to promptly pay all taxes, and carry on the premises in good and workmanlike manner. They are also entitled to a lien upon the real estate to the extent of the permanent improvements and betterments added to the place since their occupancy at their own expense, less only the indebtedness of $363 and interest, which should be deducted. In conformity to this view, a decree may be entertained, providing substantially for payment by the defendants to the complainants of the sum of $150 in semi-annual payments, and continuing for their joint lives, and continuing at the

rate of $75 per annum for the life of the survivor; * * * providing for the use, occupation, and control of the premises and property in dispute by the defendants so long as the terms of this decree are performed; declaring the defendants to have a lien upon the property for improvements and betterments added by them to the amount of $541, less said sum of $363 and interest, to be deducted therefrom; and providing, finally, that, if default shall at any time be made by defendants in the payment to the complainants of the moneys directed to be paid them for their support and maintenance, or in the payment of the taxes, or the keeping up of the premises, a sale shall be had under the direction of the court of all the premises and property in dispute; that the net amount which the defendants may be entitled to for betterments under this decree be paid them, and the residue of the proceeds of said property, real and personal, covered by the deed and contract of July 1, 1889, be paid to the complainants as their respective interests may require."

The decree of the court below is therefore affirmed, except, however, that the first payment of $137.50, named in said decree, shall be made within 60 days from the date of the decree here, and shall cover the time to March 1, 1892, and the next payment of $75 to become due and payable on the 1st day of September, 1892; with costs of this Court to defendants.

The other Justices concurred.