# JOSEPH I. MAGNUSON and Another v. ROBERT BURGESS and Another.[1]

January 23, 1914.

Nos. 18,377—(211).

**Fraud — election of remedy.**
1. Where the sale of property is effected by fraud and deceit, the defrauded party may rescind the contract on discovering the fraud, or affirm the same and retain the property.

**Measure of damages.**
2. Where he elects to affirm the contract by retaining the property, the measure of his damages for the fraud is the difference between the actual value of the property and the price paid, together with such special damage as he may have suffered in consequence of the fraud.

**Depreciation in value of use.**
3. Even though the property be sold for a particular use, the defrauded party, where he affirms the contract, can have no recovery for depreciation in the value of the use of the property, accruing after discovery of the fraud.

**Verdict — evidence.**
4. Evidence *held* to support the verdict, and that there were no errors in the exclusion or admission of evidence.

Action in the district court for Cook county to recover $1,400 for fraudulent representations in the sale of a stallion. The case was tried before Nelson, J., and a jury which returned a verdict for $1,200 in favor of plaintiffs. From an order denying their motion for a new trial, defendants appealed. Affirmed on condition plaintiffs consent to a reduction of the verdict to $600.

*Barnett & Richardson,* for appellants.
*E. H. Canfield,* for respondent.

[1] Reported in 145 N. W. 32.

BROWN, C. J.

Appeal from an order denying a new trial after verdict for plaintiffs.

The short facts are as follows: In February, 1906, defendants sold and delivered to plaintiffs, for the consideration of $1,200, a horse represented to be a registered full-blood imported Belgian stallion, named "Jupiter d'Orm." The horse was purchased by plaintiffs for breeding purposes. At the time of the sale defendants delivered to plaintiffs certain pedigree papers and certificates, in and by which it was certified by an American horse-breeders association, and by a like Belgian association, that the horse was Jupiter d'Orm, was foaled in Belgium, and imported to this country by defendants. Plaintiffs thereafter made use of the horse for breeding purposes, and in the belief that he was the animal represented, and charged compensation for his services accordingly. They made application to register the horse in the books of the Minnesota Breeders Association, an organization authorized by chapter 436, p. 618, Laws 1907, and the application was refused, for the reason, as we understand the record, that the certificates of pedigree delivered to plaintiffs at the time of the sale, and which were presented to the association in connection with the application, were not sufficient to warrant the conclusion that plaintiffs' horse was the one therein described. At about this time, and by refusal of this board to register the horse, plaintiffs discovered, as they now claim, that the horse delivered to them was not the one bargained for, was not Jupiter d'Orm, or an imported animal, on the contrary was what is known in the horse-market as a grade stallion. Plaintiffs did not, at the time of making this discovery, or at any subsequent time, offer to rescind the contract by returning the horse to defendants, or otherwise, but continued to make use of him for the purposes for which he was purchased until April, 1912, when this action was commenced. The complaint alleges that at the time of the sale and as a part of the transaction defendants represented that the horse was a full-blood imported Belgian named Jupiter d'Orm, and duly registered as such in the books of an American Association of Imported Belgian Horses, and also by a similar association in Belgium, certificates from which

associations were delivered with the horse. The complaint further alleges that the representations so made were false and fraudulent and known to be so by defendants; that the certificates of pedigree so delivered were spurious and did not belong to the horse delivered to plaintiffs. The complaint also alleges that proper certificates of pedigree are essential to the value of such horses, and that, by reason of the spurious character of the certificates delivered to plaintiffs, they were specially damaged in the sum of $800; and also that, upon discovering the fraud, plaintiffs were compelled to reduce the charge for the services of the horse to that usually charged for grade animals, in consequence of which plaintiffs were further damaged during the years 1909, 1910 and 1911, in the sum of $800; the horse is alleged to be of no greater value than $600. The answer admitted the sale of the horse as alleged in the complaint, and that the horse was represented as an imported Belgian, known as Jupiter d'Orm, and alleged that the representations were in all respects true, and that defendants in fact delivered the horse described in the certificates of pedigree to plaintiffs.

Plaintiffs had a verdict for $1,200, the full amount of the purchase price of the horse, though the evidence tended to show that he was of the value, as a grade stallion, of the sum of $400; the complaint alleged that he was worth no more than $600. The amount of the verdict is explained by the fact that the court permitted the jury to include in their award of damages the loss claimed by plaintiffs to have been suffered after discovery of the fraud by the reduction in the service charges of the horse. Defendants moved for a new trial upon various grounds, and the motion was in all things denied.

The assignments of error present three principal questions, namely: (1) Whether the evidence supports the verdict; (2) whether the court erred in the admission of evidence, and, (3) whether the court erred in permitting the jury to include in plaintiffs' damages the alleged loss in service charges after discovery of the fraud.

1. The issues presented by the pleadings narrowed down at the trial to the question whether plaintiffs received the horse Jupiter d'Orm. The evidence leaves no fair doubt of the fact that Jupiter d'Orm was a full-blood Belgian stallion, and that he was imported

from Belgium by defendants in August, 1905, nor was there any issue under the pleadings concerning the representations made by defendants at the time of the sale, though their truth or falsity was in issue. The principal question litigated was whether the particular horse was the one delivered to plaintiffs. Defendants insisted that the identical horse was delivered, while plaintiffs contended to the contrary. There was no claim by defendants that a mistake had been made and the wrong horse delivered. On the contrary, the evidence offered tended to show that they were thoroughly familiar with this horse and by their evidence traced him from Belgium to this country and into the possession of plaintiffs. So that if the horse Jupiter d'Orm was not in fact delivered to plaintiffs, but some other horse, the falsity of the representations appears, entitling plaintiffs to a recovery of such damages as they suffered in consequence thereof. The jury found that the particular horse was not delivered to plaintiffs, and defendants' first contention on this appeal is that the verdict is not sustained by the evidence. We have given this contention due consideration, examined the record with care, with the result that in our opinion the question was properly submitted to the jury. The evidence does not perhaps leave the question entirely free from doubt, but since the trial court has approved the verdict, we are not justified, within the rule guiding us in such cases, in ordering a new trial upon this ground. We do not attempt to discuss the evidence for the purpose of demonstrating the correctness of the verdict. This we are not required to do, and in the instant case it would serve no useful purpose. We are content with the statement that the record has been fully considered, with the result stated.

2. Several assignments challege the rulings of the court upon the admission and exclusion of evidence. Though some of the rulings of the court may have been erroneous, and some of the evidence excluded might properly have been admitted, and some that was admitted might have been excluded, without error, we. find no error of a character to justify a reversal of the case, except as respects the measure of damages. Assignments 1 and 2 have reference to the admission of evidence, showing the representations made by defendants

at the time of the sale, the contention being that such evidence tended to enlarge the representations contained in the written bill of sale and guaranty, and was therefore inadmissible. There was no error in this ruling. As we read the pleadings there was no substantial controversy about the representations, which were to the effect that the horse sold and delivered to plaintiffs was the horse Jupiter d'Orm. And the trial reduced this branch of the case to a question of identity of the horse. Plaintiffs produced witnesses who gave evidence of the value of the horse received by plaintiffs, and of the admission of this testimony defendants complain, the ground of objection being that the witnesses were not shown to be competent to testify upon the subject. This question was addressed largely to the discretion of the trial court, in the exercise of which we discover no abuse. Defendants offered to show by the secretary of the American Breeders Association the identity of the description of the horse Jupiter d'Orm, as contained in the foreign certificate of pedigree, and as contained in the certificate issued by the association of which the witness was secretary. There was no error in the rejection of this testimony. It was immaterial. There was no controversy but that Jupiter d'Orm was a Belgian stallion, and it may be conceded that the particular horse was similarly described in both certificates, though there may have been some controversy upon the question. But the evidence offered would have no tendency to show that the horse so described was the animal delivered to plaintiffs. The same may be said of the exclusion of Exhibits 7, 8, 9 and 10, which are corroborative and tended to substantiate the claim that Jupiter d'Orm had been imported from Belgium by defendants. The examination of witness Montgomery, secretary of the Minnesota Breeders Association, may have in some measure encroached upon the rule of hearsay evidence, but not to such an extent that it may be said to have substantially prejudiced defendants' cause. The witness did not undertake to say whether plaintiffs received the horse they purchased. His testimony related almost wholly to an explanation why his association refused registration to the horse Jupiter d'Orm, and that appears to have been for the reason that the pedigree certifi-

cates given plaintiffs had been altered and changed to such an extent as to leave the verity of the certificates in doubt.

3. The other assignments have reference to the damages awarded plaintiffs by the jury, and present a meritorious question. Plaintiffs were permitted to recover, in addition to the difference in value of the horse, the alleged loss in service charges incurred after the discovery of the fraud and during the years 1909, 1910 and 1911. In this we hold that the court below was in error; the alleged loss in service charges should have been excluded.

The law is well settled that, in the case of a breach of an ordinary warranty of the condition or quality of personal property, where the purchaser retains the property, the general rule of damages is the difference in value of the property in the condition or of the character represented and its value in fact. 3 Dunnell, Minn. Dig. § 8624. While in the case of fraud and deceit, where the property is not returned, the rule is the difference between the actual value and the price paid, and such special damages as resulted approximately from the fraud. Marsh v. Webber, 16 Minn. 375 (418); 1 Notes on Minn. Reports, 680. Stickney v. Jordan, 47 Minn. 262, 49 N. W. 980; Redding v. Godwin, 44 Minn. 355, 46 N. W. 563. In cases of this character the special damages are necessarily limited to such as occurred prior to a discovery of the fraud, and of the fact that the property was not of the character represented or suited to the purposes intended. For it is clear that the defrauded party, after discovering the fraud, cannot retain the property and claim special injury thereafter. In the case at bar the horse was purchased for breeding purposes, and he was represented as a Belgian stallion. Plaintiffs discovered that the horse was not as represented and that they had been defrauded early in the year 1909, and thereafter made use of the animal as a grade stallion, at reduced service charges. There is no claim that plaintiffs suffered any loss in consequence of this fact prior to 1909, and we have been cited to no case holding that in such a state of facts recovery may be had for losses of this kind, occurring after notice of the facts. Upon a discovery of the fraud in such cases the defrauded party has the election of one of two remedies, namely: (1) Rescind the contract by returning or offering to

return the property, and recover back the purchase price, together with such special damages as he may be entitled to, and (2) affirm the contract by retaining the property, and claiming the difference in value, with special damages if any. Where the election is to affirm the contract, the property becomes absolutely and fully vested in the purchaser, and the seller is no longer liable for injuries suffered from its use, or its failure to correspond with the representations as to character or usefulness. In other words, the purchaser in such case elects to take the property with knowledge of its actual condition, and to reimbursement by a recovery of the difference in value, and such special damage as may have accrued up to the date of making the election. 2 Mechem, Sales, 1843; 24 Am. & Eng. Enc. (2d ed.) 1157, et seq; Haven v. Neal, 43 Minn. 315, 45 N. W. 612; Mlnazek v. Libera, 83 Minn. 288, 86 N. W. 100. After discovery of the fraud the defrauded party has a reasonable time in which to make his election, and when made it is final, and ends the relation between the parties as to the future, in respect to the particular transaction. Peak v. Frost, 162 Mass. 298, 38 N. E. 518. In the case at bar plaintiffs elected to affirm the contract, that is, there is no claim that they attempted to rescind the same upon the discovery of the fraud, and they still hold the horse. They cannot therefore recover special damages subsequently accruing, and the court was in error in its charge to the jury upon the question.

4. But we deem it unnecessary to order a new trial for this error, for a reduction of the verdict may be ordered which will end the litigation. The complaint alleged that the horse was of no greater value than $600, and the evidence tended to show that he was worth no more than $400. Just what value the jury placed upon the horse is, of course, not made clear by the record, but it may be assumed that they adopted the value admitted by the complaint, and that the balance of the verdict of $1,200 represents the loss suffered after discovery of the fraud. Such being the case, a reduction of the verdict to $600 will meet the ends of justice and bring the litigation to a close.

It is therefore ordered that the order appealed from be reversed and a new trial granted, unless plaintiffs shall, within 10 days after

the cause is remanded, elect to reduce the verdict accordingly, and remit therefrom the sum of $600, taking judgment for a like amount, with interest since the date of the verdict. If such election is made, the order appealed from will be and it is affirmed.

It is so ordered.