WILLIAM (ALSO KNOWN AS WILHELM) PRIEBE v. CARL G. SETTE AND ANOTHER.[1]

June 5, 1936.

No. 30,790.

[1]Reported in 267 N. W. 376.

454

*Nelson & Nelson,* for appellant.
*Leach & Leach,* for respondents.

I. M. OLSEN, JUSTICE.

Plaintiff brings this action to recover the value of board, room, and washing which he claims defendants have failed to furnish to him since July 1, 1934, under the contract hereinafter set forth, asking that he be awarded the value thereof for the balance of his life expectancy, or for such other and further relief as may be just and equitable, and that the judgment awarded be made a lien upon the real property conveyed. The trial court found against the plaintiff. An alternative motion was made for amended findings of fact and conclusions of law or a new trial, and plaintiff appeals from the order denying such motion "in all respects."

Plaintiff was the owner of 20 acres of farm land, with buildings thereon, near Owatonna in this state. He was a widower about 69 years of age and had resided on this property as his home for some years. Mrs. Siren, one of his daughters, had kept house for him for some years after the death of his wife. On January 4, 1934, plaintiff entered into a written contract with the defendants, Carl G. Sette and Helen L. Sette, husband and wife, to sell, convey, and transfer to them this real property and the personal property owned by him located on said 20-acre tract. In consideration of such sale and conveyance, to be made, the defendants agreed to pay to plaintiff $2,000 cash "as soon as said second parties receive their money from the Federal Land Bank of St. Paul, Minnesota, and hereby agree to give to said first party board, room and washing for the balance of life by the said second parties." Five dollars was paid at the time to bind the bargain. Helen L. Sette is a daughter of the plaintiff. At the time of making the contract defendants were

living in Minneapolis. On or about February 1, 1934, defendants made the payment of $2,000, less the five dollars before paid, and plaintiff then conveyed the real estate and delivered the personal property to them. Defendants at that time moved onto and took possession of the property. Plaintiff remained and lived with them until about July 1, 1934, and received his board, room, and washing from them during that time. He left the place at that time and has not since lived with defendants or received any board, room, or washing from them. He has since lived with one of his sons on another farm.

Soon after the defendants came into possession of the property difficulties and differences, minor in character, arose between the parties and continued and cumulated up to the time plaintiff left the home. Plaintiff complains that he was not treated with the consideration and kindness to which he was entitled; that he was treated with disrespect; that abusive language was used to him on some occasions; that most of the time defendants, and especially the son-in-law, ignored him and would not speak to him; that such treatment caused him to feel that he was not wanted in defendants' home; that ill feeling and hostility toward him appeared, and he did not consider it safe for him to remain with defendants. It is not here necessary further to detail the minor circumstances testified to by plaintiff. Defendants deny any mistreatment of plaintiff and claim and testify that any matters complained of were caused by plaintiff and not by them. They contend also that plaintiff was in the habit of using intoxicating liquor and was disagreeable. This is denied by plaintiff.

It is conceded that the property conveyed and personal property transferred were of the aggregate value of $4,450.

The court found in part as follows:

"That defendants have not failed or refused to perform the said agreement on their part and have not failed or refused to give to plaintiff, through any fault of their own, the board, room and washing called for by the said agreement."

In its memorandum to the findings the court said:

"No facts are disclosed by the evidence which would warrant this court in holding that defendants have violated their agreement or in awarding damages to plaintiff for any such violation."

If this were an ordinary action to recover damages for the breach of a contract entered into in an ordinary commercial or business transaction between unrelated parties, the findings and memorandum on this issue could readily be sustained. The trial court, however, has inadvertently overlooked the distinction between a contract of this kind, in the situation here shown, and the ordinary commercial or business contract. The disagreements and difficulties between these parties, taken up separately, were not of a very serious nature. But there is uncontroverted evidence of a situation which would make it improper and practically impossible for the plaintiff to return to the home of the defendants and receive his board, room, and washing there. The ill feeling and differences between them have now become so pronounced that they cannot live together in peace and harmony or further carry out the intent and purpose of the contract. Plaintiff, the father of Mrs. Sette, as pointed out in a number of the decisions, was entitled to receive the natural affection and consideration which filial duty ordinarily prompts a child or children to give to a parent. As said in Bruer v. Bruer, 109 Minn. 260, 265, 123 N. W. 813, 814, 28 L.R.A.(N.S.) 608:

"There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for."

The evidence of ill feeling between the parties is clearly shown. That they were not on speaking terms is testified to by plaintiff and his son Arthur. It is not seriously disputed by defendants. In addition to that, the plaintiff testified that it was dangerous and

unsafe for him to return to defendants' home. The defendant Carl Sette testified that it would not be safe for him and his family to have plaintiff return to their home. It further appears that there had been a prior action by plaintiff to cancel the deed and contract, which had been dismissed at the close of plaintiff's evidence. That does not prevent other relief from being granted. Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L.R.A. (N.S.) 608. But the fact that there has been prior litigation, and now this contested case, tends to emphasize the conclusion that these parties can no longer live together in the relation intended by the contract, and that it is not practically possible further to carry out the contract. In that situation the court should grant such relief as in equity and good conscience will secure compensation to the plaintiff for such loss as will result to him. As said in Miner v. Miner, 91 Mich. 44, 48, 51 N. W. 702, 703, in a somewhat similar situation:

"We are satisfied that the differences have become so pronounced that no benefit could come to either party, and great wrong might be done, especially to the complainants, if the court should undertake to decree anything in the nature of a specific performance of this contract. We regard it as a case where all the essential elements of the contract are practically destroyed when mutual confidence and respect have ceased."

The case of Wilson v. Wilson, 160 Mich. 555, 125 N. W. 385, 386, is quite similar to the present case on the facts. The plaintiff, a widow, deeded a farm to defendant, her grandson, in consideration of an agreement by him to support and maintain her during her lifetime. The parties moved upon the farm. Defendant made valuable improvements thereon. All went well for a time. Later some minor trouble arose, and plaintiff went to live with her daughter. She brought suit to cancel the deed. The trial court found [160 Mich. 557]:

"Complainant does not seriously claim that she was not properly supported by defendants, but claims they were unkind to her in many ways. The alleged instances concern matters of small importance, and of such character that I shall take no time discussing

458

them. These little differences are liable to come up in any family, especially where elderly people live with younger ones, and if the title to property should be upset every time something of the kind happens, the courts would be busy all the time. I conclude, therefore, that complainant's bill ought to be dismissed, or at least that she should not receive the relief prayed for by her.

"However, it does appear that it would be unwise for these people to live together on this farm, and I think the decree should provide that Fred Wilson should pay complainant what the fair rental value of the property would be (less the taxes), from the time when she left until her death, payable yearly."

The supreme court said [160 Mich. 558]:

"The record satisfies us that no fraud or deceit was practiced upon her, and that she knew she was deeding the farm to defendant; and desired to do so. Trouble arose between her and her grandson and his wife, Laura Wilson, which perhaps might have been anticipated, and which could have surely been avoided by the exercise of more patience on the part of all three of them. It is very likely if some of the relatives had been as anxious for the comfort of the complainant as they profess, and had indicated it in more fortunate ways, there would have been no litigation. The trouble which arose is unfortunate and cannot now be cured. The litigation has doubtless intensified the feeling between them, so that it is doubtful if the undertaking contemplated by the parties could now be so executed that the complainant would be contented and comfortable in her old home."

The supreme court increased the yearly payment awarded by the trial court, and affirmed the lower court in other respects.

In Johnson v. Paulson, 103 Minn. 158, 114 N. W. 739, the decisive findings of the trial court, sustained here, were that there was an utter failure to treat the plaintiff with the degree of affection and care contemplated by the parties when the conveyance was made. The friction between the parties had become so apparent and deep-rooted that it seemed to the court impossible for them to carry out the spirit of the contract. This court held that under such circum-

stances plaintiff was entitled to relief. It is true that in that case there were additional findings that defendants failed to provide proper room, food, and necessaries required, but in the review here the findings above noted were the ones pointed out as justifying affirmance.

In Dose v. Dose, 172 Minn. 145, 147, 214 N. W. 769, 770, this court said:

"She [plaintiff] realized that she was not being treated right at the home of her son, and wanted to go back to her old home in Lester Prairie; but Henry [the son] desired that for his son's home. The trial court's examination of Henry drew forth his attitude towards plaintiff, quite clearly showing that it was unendurable for her to be dependent upon him for care and support."

Practically the same situation exists in the present case. The intent and purpose of this contract was to secure to plaintiff a comfortable home in his old age where he would receive the affectionate care and consideration of his daughter and her family. He was to be there and provided with proper room, board, and washing, but was to provide his own clothing and defray his other personal expenses. To say that because the incidents testified to by plaintiff, that is, the particular acts of defendants complained of, were trivial and insignificant, or that there has been no direct refusal by defendants to furnish board, room, and washing, and therefore no breach of the contract, is too narrow a construction. It ignores the most important element of such a contract, that is, that plaintiff shall receive the affection and consideration due him from his daughter and her husband and family, there being two (now three) grandchildren in that home. This mutual confidence and relation, "sacred in its nature," as held in the Bruer case, 109 Minn. 260, 265, 123 N. W. 813, 814, 28 L.R.A.(N.S.) 608, was clearly not here observed or given to this plaintiff. Taking the evidence here presented as a whole, there was, and should have been found by the trial court, a breach of the contract in that regard. Granting that plaintiff, by his own fault, caused or contributed to cause some of the incidents referred to, the fact remains that there is now such hostil-

ity and feeling on the part of the son-in-law and on the part of the plaintiff also, and such feeling of danger and insecurity on the part of each of them if plaintiff were to return to defendants' home that it is not possible for them further to carry out the contract. In that situation the court should grant equitable relief. What that relief should be is, in the first instance, for the trial court to determine. Cancellation of the contract and deed is not here called for. A payment, monthly or at other stated intervals, of what the trial court may determine is the reasonable value of board, room, and washing for the plaintiff, in the locality where defendants reside and in a home substantially of the same kind as that of these defendants, may be proper relief. But we leave to the trial court the determination of what relief will be just and equitable. To deny any relief in this case would result in the enrichment of the defendants to the extent of some $2,300 and a corresponding or at least substantial loss to this plaintiff.

The finding of the trial court that the contract, while not expressly so stating, intended that the board, room, and washing for the plaintiff was to be furnished at defendants' home on the premises conveyed, is sustained by the evidence.

The plaintiff is not in a position to claim error on the admission in evidence of conversations between the parties at the times the contract and deed were made, having opened up that subject in presenting plaintiff's evidence. In any event, no prejudice resulted.

The order appealed from is reversed and a new trial granted on the question of the relief to be granted to the plaintiff.

Reversed.