## CLARA MAY NELSON MANEMANN v. LUELLA MANNEMANN WEST AND ANOTHER.[1]

February 28, 1944.

No. 33,695.

L. P. Johnson, for appellants.
E. V. Molle, for respondent.

[1]Reported in 13 N. W. (2d) 474.

LORING, CHIEF JUSTICE.

This is an action to rescind and cancel a deed given in consideration of a promise to support the grantor and her minor son. The court ordered cancellation and gave plaintiff judgment for $1,065.86. The appeal is from the judgment and an order denying defendants' motion for amended findings or a new trial. Only the order denying a new trial is appealable.

The land involved is a 245-acre farm in Lyon county. In 1939, plaintiff, a widow, was the owner in fee and resided thereon with two sons, Roy, who operated the farm, and Charles, who was then 12 years old. Defendant Luella West is a daughter of plaintiff, and defendant William West is Luella's husband. August 9, 1939, most of the members of the immediate family met in a lawyer's office at Marshall, Minnesota, and there plaintiff executed a deed to defendants in consideration of the following agreement:

"August 9, 1939

"To Whom It May Concern:

"We, the undersigned, agree to take care of my mother as long as she lives and take her to a doctor and see that she receives the care that is necessary and look after her.

"Also to keep Charles and send him through high school if he cares to go.

"And he can live with us until he is of age if he cares to stay.

"Signed Mrs. Luella Manemann West
"Wm. M. West."

Shortly thereafter defendants moved their family and personal property, including livestock, onto the farm and are now in possession. Plaintiff and Roy executed to defendants a bill of sale of certain personal property on the farm. For three years the premises have been profitably farmed. Defendants have increased the mortgage by $2,500 but have repaired the residence, built a new barn, poultry house, granary, and corncrib. Plaintiff and Charles lived with defendants until 1942. Charles left in September to work at another farm, and plaintiff left a month later. This ac-

tion for cancellation of the deed followed. It was based on a breach of the contract to care for and support plaintiff and Charles.

The court has found such a breach. Defendants contend that the evidence does not justify (1) rescission or cancellation of the deed and (2) the adjustment adjudicated between the parties.

■ Plaintiff's evidence tended to prove that during the time she lived with defendants she performed the usual duties incidental to housekeeping but that she received little consideration from her daughter; that Luella habitually called her "half-witted" and vile and obscene names; told her she should apply for a mother's or old age pension; censored her mail; failed to provide medicine prescribed by her physician; and, on one occasion, when plaintiff was ill in bed for two days, failed to inquire after her or provide her with food for that period of time.

The evidence also tended to prove that Charles, who was then in grade school and who performed chores before and after school and during vacations, was regularly beaten with a stick, a stove poker, and stove lifter, and on one occasion forcibly prodded with a pitchfork. Although most of this testimony was given by plaintiff and Charles and is denied by defendants, there is corroboration on the part of a neighbor who heard Luella cursing Charles and beating him to such an extent that he interfered. Charles was ordinarily not permitted to eat at the table, was locked in his room at night, and once was incarcerated there for a period of two weeks, when he was fed only a scanty meal once or twice a day. The boy left "home" shortly after this episode.

From this evidence the court found that Luella's treatment of plaintiff, her mother, was "unkind and cruel"; that both defendants treated Charles in a "cruel and inhuman" manner; and that plaintiff and Charles were justified in leaving the farm. The evidence is more than sufficient to support these findings.

■ Defendants contend that cancellation of the deed is not the proper remedy. We are not unmindful that in some jurisdictions cancellation and rescission is not an available remedy in this kind of cases; at least, in the absence of special circumstances. See note,

112 A. L. R. 670. But the majority rule is that conveyances of property in consideration of agreements to furnish support are regarded differently from ordinary commercial contracts, and if the grantee repudiates or substantially fails to perform the agreement rescission and cancellation may be properly decreed. This rule is well established in this state. Allen v. Allen, 204 Minn. 395, 283 N. W. 558; Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L.R.A.(N.S.) 608; Haataja v. Saarenpaa, 118 Minn. 255, 136 N. W. 871; Priebe v. Sette, 197 Minn. 453, 267 N. W. 376. That the deed may be given in whole or in part for the care and support of a third party does not change the rule. Wilfong v. Johnson, 41 W. Va. 283, 23 S. E. 730; Dose v. Dose, 172 Minn. 145, 214 N. W. 769. Under the facts of this case, no other remedy would have been appropriate.

■ Was there an equitable adjustment between the parties? The trial court awarded all the personal property on the farm to defendants and gave plaintiff judgment for $1,065.86. This was arrived at in the following manner:

> Defendants' debits .............. $8,235.00
> Defendants' credits ............. 7,169.14
>
> Difference .............. $1,065.86

(a) DEFENDANTS' DEBITS:

> (1) Personal property transferred to
>     defendants ................... $2,795
> (2) Increase in mortgage on farm... 2,500
> (3) Use of land for three years..... 2,940
>
>     Total ................. $8,235

(1) Plaintiff's evidence tended to show that the total value of the personal property, including growing crops at the time of transfer, was $3,885. Defendants' evidence was that the value of this property was only $1,040.30 without any allowance for the value of the farm machinery. The court was well within the evidence in fixing

the value between these extremes. (2) There is no dispute about the increase in the mortgage. (3) The court arrived at the amount for the use of the land by fixing the rental value of the farm at $4 per acre. The testimony on this point varied from $2.50 to $5 per acre. Obviously, the court's finding cannot be disturbed here.

(b) DEFENDANTS' CREDITS:

The court found that the work performed by plaintiff and Charles fully equalled the value of the care and support they received, and that the value of the farm did not increase more than the value of the improvements made thereon during the three-year period, and no allowance is made for these items. There is ample support for both findings. The valuation of the improvements was arrived at as follows:

|     |                   |            |
| --- | ----------------- | ---------- |
| (1) | New barn          | $4,000.00  |
| (2) | New granary       | 750.00     |
| (3) | New poultry house | 1,000.00   |
| (4) | New corncrib      | 100.00     |
| (5) | Repairs to house  | 500.00     |
| (6) | Taxes             | 569.14     |
| (7) | Other improvements | 250.00    |
|     | Total             | $7,169.14  |

The principal objection is to the valuation placed on the barn, which defendants contend is worth at least $5,000. But in his verified answer defendant William West stated the value to be $4,500, and there was testimony that its value was but $4,000. The evidence on the cost of its construction is unsatisfactory. The old barn was torn down and the lumber used for the new one. Defendants do not seem to consider this in appraising the *improvements.* One witness testified that the value of all the buildings, including the eight-room residence, was between $7,000 and $8,000 after all the improvements were made. The trial court was not bound by the testimony of any witness, and his finding cannot be disturbed. The valuation placed on the other buildings was that placed there-

on by defendants themselves in their verified answers. The value of the repairs to the residence was taken from Luella's own testimony.

The record discloses that, considering all the evidence, most of which was conflicting, the trial court made a careful and equitable adjustment between the parties.

■ Defendants support their motion for a new trial on the ground of newly discovered evidence with numerous affidavits. These establish neither the alleged perjury on the part of any witness nor diligence on the part of defendants, as there is no showing that any of the proposed witnesses were not available at the trial.

The judgment and order appealed from are affirmed.