# ABE LEHMAN v. HANSORD PONTIAC COMPANY, INC.[1]

December 9, 1955.

No. 36,677.

[1]Reported in 74. N. W. (2d) 305.

2

*Henry Levine*, for appellant.

*Ryan, Kain & Mikan*, for respondent.

NELSON, JUSTICE.

The plaintiff commenced his action for damages against the defendant in the municipal court of Minneapolis, basing his claim on fraud and misrepresentation and alleging that defendant represented to him that he was selling him a 1951 Pontiac used automobile but delivered to him a 1950 used model. In about a week after the transaction was closed and the car paid for and delivered, plaintiff discovered that he had gotten a 1950 model and notified the defendant. No corrective action being taken, suit followed.

The transaction took place July 3, 1953, at defendant's place of business. A sales representative of defendant, by the name of Girard, demonstrated the automobile to the plaintiff, stating to him at the time that this was the finest 1951 model he could find in the city. Plaintiff thereupon took delivery of the car and paid as the purchase price therefor $1,350 in cash. The salesman made out a written purchase order describing the car as a Hydromatic Tudor 1951 model giving the engine serial number. He then made out a receipt for the downpayment of $10 and later the same day a receipt for payment in full, reciting in each receipt that the money paid was for the purchase of a 1951 Pontiac. Insurance coverage was arranged for covering a 1951 model and policy delivered thereon.

Upon receipt of the invoice at the end of a week, plaintiff discovered that the description of the car purchased read: " '50 Ch Dlx 4 dr Used." He testified that he had relied upon the representations of the salesman Girard and that, upon learning that the car delivered was a 1950 model, he immediately telephoned Girard, stating what he had discovered. He was told that he did not know what he was talking about; that it was a 1951 model; and that "it is a mistake in the bill." Shortly thereafter Mr. Girard came to plaintiff's house regarding the transaction, at which time according to the record the following conversation took place:

"Q. Now, you may state what the conversation was which was had in your home between yourself and Mr. Girard regarding this automobile?

"A. He came over to me and asked me if I don't like the car. I said, 'Yes, I like it.' 'So why did you put the dog hounds on me, because if they don't take the dog hounds off of me, then I'm going to lose my job.'

"Q. What else, if anything, was said?

"A. Well, I said, 'If this is a '50 and I bought a '51, where can I get a '51?' 'Well,' he says, 'I can't give it to you now, can't give it to you now.' "

The case came on for trial September 24, 1954, without a jury. The salesman Girard was no longer in the employ of the defendant and was not called as a witness. Plaintiff alleged that he relied upon the statements and representations made to him by defendant's sales representative; that such representations were false and untrue; that he was deceived and defrauded to his damage in the sum of $300, the 1950 used model being in fact not worth more than $1,050 while a 1951 model was worth the amount which he had agreed to pay for it.

The court found that defendant's agent on July 3, 1953, knowingly misrepresented to plaintiff that a certain Pontiac used automobile was a 1951 model, whereas in fact said used automobile was a 1950 model, and that in reliance on said misrepresentations plaintiff was induced to and did purchase said used automobile and then and there paid to the defendant the agreed purchase price. The court further found that the market value of the 1950 used model was, on the date of the sale, not less than what the plaintiff paid for it in cash and entered its conclusions of law that defendant defrauded the plaintiff but no monetary damages resulted therefrom. Judgment was ordered for plaintiff for his costs and disbursements.

Plaintiff moved the court for amended findings of fact and conclusions of law, or for a new trial; that the findings of fact be amended to read that the market value of the used 1950 model delivered to plaintiff was $1,050; and that the conclusions of law be amended to read that:

"Defendant defrauded the plaintiff resulting in plaintiff being damaged in the sum of $300.00.

"Let judgment be entered for the plaintiff in the sum of $300.00 plus his costs and disbursements herein."

Plaintiff further moved that in the event that this motion be denied he be granted a new trial upon the following grounds:

"1.   That the Court erred in failing to find damages in plaintiff's favor.

"2.   That the Court's findings of fact and conclusions of law sustains plaintiff to have been damaged as a matter of law.

"3.   Errors of law occurring at the trial."

Plaintiff assigns errors on appeal from the judgment as follows:

"1.   The Court erred in denying plaintiff's motion for amended findings.

"2.   The Court's findings as to value of the car purchased by plaintiff is contrary to the evidence and law.

"3.   The Court's conclusions of law are not sustained by the findings made herein.

"4.   The Court erred in denying plaintiff's motion for a new trial."

Plaintiff's assignments of errors do not comply with the rules of practice of this court. There is a failure to point out any specific error of law occurring at the trial and a failure to set forth the specific finding challenged by specific assignment of error as required. 1 Dunnell, Dig. (3 ed.) § 361. See, Taylor v. Chicago G. W. R. Co. 165 Minn. 266, 206 N. W. 404; Raymond v. McKenzie, 220 Minn. 234, 19 N. W. (2d) 423.

It is the rule, and it is well settled in this state, that findings of fact made by the trial court will be disturbed only where the evidence does not reasonably tend to support them when such evidence is considered as a whole. McLellan v. Stevens, 176 Minn. 419, 223 N. W. 770; S. Bader & Sons v. Gensler, 191 Minn. 571, 255 N. W. 97; Georgopolis v. George, 237 Minn. 176, 54 N. W. (2d) 137; 1 Dunnell, Dig. (3 ed.) § 411.

We have before us a fairly complete record of the proceedings at the trial and, while the assignments of error doubtless are faulty,

6

we have concluded to dispose of the appeal on its merits. In re Estate of Fitzgerald, 205 Minn. 57, 285 N. W. 285. It appears on this appeal that the defendant has voluntarily considered questions in its brief argued by the appellant and therefore, this being a civil case, this court may if it chooses to do so consider the appeal upon the merits as was done in Erickson v. Mathwig, 226 Minn. 55, 31 N. W. (2d) 918. In the instant case the plaintiff caused judgment to be entered March 14, 1955, and appealed therefrom. He moved, in the court below, for amended findings and conclusions of law, and if same be denied, for a new trial. While the order denying the motion to amend findings and conclusions of law is not appealable, we have here an appeal from the judgment. Such order may be reviewed on appeal from the judgment. Louis F. Dow Co. v. Bittner, 185 Minn. 499, 241 N. W. 569; Breen v. Cameron, 132 Minn. 357, 157 N. W. 500; Nash v. Kirschoff, 161 Minn. 409, 201 N. W. 617. M. S. A. 605.09 (1) provides that on appeal from a judgment the supreme court "may review any intermediate order involving the merits or necessarily affecting the judgment appealed from." One of the grounds upon which the plaintiff moved the court, in the alternative, for a new trial was errors of law occurring at the trial.

It was error for the court to deny the plaintiff, owner of the automobile in the case at bar, the right to testify as to its value without laying any further foundation than that he was in fact the owner thereof. He was denied the right to testify as to value on the ground that no proper foundation had been laid.

In this state the owner of property either real or personal is presumptively acquainted with its value and may testify as to its value. It has also been held that a person may testify as to the value of his own services; that a farmer may testify as to the value of crops such as he raises and sells and to the value of farmlands in his vicinity. Persons familiar with the value of automobiles in Minneapolis have been held competent to testify as to their value in Duluth. 7 Dunnell, Dig. (3 ed.) § 3322, and cases cited. In Foot v. Yorkshire F. Ins. Co. Ltd. 205 Minn. 478, 286 N. W. 400, it was held that an owner of property may as a rule testify to its value without

any particular foundation being laid.[2] The question as to the value here was not of the character of which courts take judicial notice. Sleeper v. Zeiter, 178 Minn. 622, 227 N. W. 662.

The rule that the owner of an article whether he is generally familiar with such value or not is entitled to testify as to its worth, is quite generally subject to the rule that, if there is an apparent lack of knowledge on the part of the owner as to value of his property, the same goes to the weight of the testimony given but not to the competency of that testimony. 32 C. J. S., Evidence, § 545. It is, however, the rule in this state that a trial court is not bound by the opinion of any witness concerning values and that its findings will ordinarily be sustained if within the limits of the evidence as to values. Manemann v. West, 216 Minn. 516, 13 N. W. (2d) 474. It is nevertheless a widely accepted rule that, where the value of property is in issue and the value of property admissible, a wide range of investigation is permitted in determining value and that the rules as to the admission of evidence as to value are to be liberally construed. This rule is of general application in cases such as the one before the court.

Whether the value is intrinsic in the property itself or regulated due to the market, it has generally been considered a quality so subtle and intangible, affected so largely by individual estimate or opinion, and market standards consisting of opinions not under oath of many or an indefinite number of persons whose opinions are affected or arrived at in many and various ways. These opinions may be arrived at by the use of generally recognized trade lists, by becoming familiar with current prices, and through publications more or less official and otherwise. Under the circumstances a relaxation of strict rules of evidence has been considered necessary for the reason that use must be made of such probative methods as

---

[2]Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688; Zacherl v. Goldberg, 166 Minn. 193, 207 N. W. 305; Smith v. Travelers Ins. Co. 207 Minn. 349, 291 N. W. 516; Hoffman v. Piper, 181 Minn. 603, 233 N. W. 313; Thompson v. Harry W. Smith Auto Livery Co. 155 Minn. 358, 193 N. W. 593; Egekvist v. Minnetonka & W. B. Nav. Co. 146 Minn. 474, 178 N. W. 238; Paterson v. Chicago, M. & St. P. Ry. Co. 95 Minn. 57, 103 N. W. 621.

are available. Therefore it has been held that value or market price may be shown by either direct or circumstantial evidence. It is established in the law generally that the market value of a thing is what it will bring in the open market, the price which the owner, if willing but not compelled to sell, could obtain from a buyer, willing but not compelled to buy. It has also been defined as a price established by public sales in the way of ordinary business and it may be proved as it existed at any time at which it is relevant where the exchange of a commodity is made, for another commodity or for cash. If the exchange is made for cash, then any testimony offered representing value in trade should be excluded.

When it comes to the matter of explaining value and market value, it is always open to one party, for the purpose of impairing the weight of the testimony introduced by the opposite party, to advance reasons and substantiate them why the market price proved by the opposite party is unduly enhanced or unduly depressed. 31 C. J. S., Evidence, § 181. See, 32 C. J. S., Evidence, § 593.[3]

■ Since it is the fair value which is sought to be arrived at, it ought to be determined by reference to all relevant facts in the evidence having probative value, taken together with other opinion evidence reflecting the usages and the habits of the trade and the times, and this rule ought to apply in actions based upon fraud and deceit. Since approximation is limit of endeavor in ascertaining property values,[4] we might thus more nearly arrive at the true and proper value demanded by the occasion and the circumstances whether the value shown is the actual value, the intrinsic value, or the value as regulated by the market. We believe that the record will indicate in the instant case that testimony as to value was unduly restricted. If there was a failure to make use of such probative methods as are available, if admissible, and there was a fail-

---

[3]Standard price lists and market reports endorsed by trade experience have been recognized by a number of courts as being admissible as an exception to the hearsay rule. See, 6 Wigmore, Evidence (3 ed.) § 1704, and cases cited.

[4]Morrow Transfer Co. v. Robinson, 8 Ga. App. 409, 69 S. E. 317; Tierney v. United Pocahontas Coal Co. 89 W. Va. 402, 109 S. E. 339.

ure of proof, it may well have occurred because plaintiff's attorney misconceived the true measure in the case.

■ This being an action in deceit, it lies to make a defrauded party whole on his bargain if he suffered damage.

In the case of a breach of an ordinary warranty of the condition or quality of personal property, where the purchaser retains the property, the general rule of damages is the difference in value of the property in the condition or of the character represented and its value in fact. 17 Dunnell, Dig. (3 ed.) § 8624. In the case of fraud and deceit, however, where the property is not returned, the rule in this state is the difference between the actual value and the price paid and such special damages as resulted approximately from the fraud. In deceit cases the special damages are necessarily limited to such as occurred prior to a discovery of the fraud, and of the fact that the property was not of the character represented or suited to the purposes intended under the terms of an agreement or sale. In the case at bar the automobile sold to the plaintiff constituted a used-car sale and the car sold was represented to the purchaser as a 1951 model. Plaintiff discovered that the car was not of the model as represented but of an earlier vintage, and to that extent he contends he was defrauded through deceit practiced upon him by the representative of the seller. Magnuson v. Burgess, 124 Minn. 374, 145 N. W. 32, and cases cited therein.

Here we have a false representation as to a material fact; that is, a fact or facts material to the purchaser with reference to the question whether for certain reasons stated the purchase will be for his advantage. The gravamen of the charge is to be found in the deception practiced upon the plaintiff, and the damage suffered by him, not that the defendant has gained an advantage. Whether the person making the representation received any benefit from the deceit is unimportant nor is it necessary that he should collude with the party who has benefited. Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360; Fisher v. Mellen, 103 Mass. 503. One of the essential elements is that the party induced to act has been damaged, and, of course, that acting in good faith he relied on the false representa-

tions to his damage. Harm must have come to him, and the deceit and the injury or the damage must concur. Damage is the essence of the action of deceit and an essential element to make the right violated actionable. Alden v. Wright, 47 Minn. 225, 49 N. W. 767.

The rule adopted in this state as the measure of damages in the usual case of deceit is fully stated by this court in Rosenquist v. Baker, 227 Minn. 217, 35 N. W. (2d) 346.[5] It is clear from the cases cited that Minnesota has never accepted the so-called "benefit-of-the-bargain" rule as applicable to the law of damages in actions for deceit, but has adopted and consistently applied what is referred to as the "out-of-pocket" rule. It is not the majority rule when measured by its application in other state jurisdictions, but the rule is applied in the federal courts.[6] In short the measure of damages under the "out-of-pocket" rule in deceit actions is the loss naturally and proximately resulting from the fraud, and it will usually be the difference between what the plaintiff parted with and what he got. 8 Dunnell, Dig. (3 ed.) § 3841. It is therefore not a question of what the plaintiff might have gained through the transaction but what he lost, by reason of defendant's deception.

The action is one in tort. The burden of proving the fraud and the loss sustained, if any, is on the one who complains and the amount of the damages is a fact question to be determined from a consideration of all the facts in evidence under the above rule. The question is one as to what, if any, pecuniary loss the evidence sus-

[5]Houchin v. Braham Investment Co. 202 Minn. 540, 279 N. W. 370; Perkins v. Meyerton, 190 Minn. 542, 545, 251 N. W. 559, 560; Townsend v. Jahr, 147 Minn. 30, 179 N. W. 486; Brody v. Foster, 134 Minn. 91, 158 N. W. 824, L. R. A. 1916F, 780; Nelson v. Gjestrum, 118 Minn. 284, 136 N. W. 858; Vilett v. Moler, 82 Minn. 12, 84 N. W. 452; Wallace v. Hallowell, 56 Minn. 501, 58 N. W. 292; Stickney v. Jordan, 47 Minn. 262, 49 N. W. 980; Reynolds v. Franklin, 44 Minn. 30, 46 N. W. 139, 20 A. S. R. 540; Rockefeller v. Merritt (8 Cir.) 76 F. 909, 35 L. R. A. 633; Tischer v. Bardin, 155 Minn. 361, 194 N. W. 3.

[6]McCormick, Damages, §§ 121, 122; Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 33 L. ed. 279. On "out of pocket" or "benefit of bargain" as proper rules of damages for fraudulent representations inducing contract, see Annotation, 124 A. L. R. 37 to 82.

tains by reason of the misrepresentation. Perkins v. Meyerton, 190 Minn. 542, 251 N. W. 559; Townsend v. Jahr, 147 Minn. 30, 179 N. W. 486; Barthelemy v. Foley Elev. Co. 141 Minn. 423, 170 N. W. 513.; Magnuson v. Burgess, 124 Minn. 374, 145 N. W. 32.

█ If a new trial is ordered, the appellate court may and generally does consider questions not technically before it which will arise on a new trial, especially where such questions may be in any way decisive. Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945. Jurisdiction of the municipal court of Minneapolis is governed by L. 1949, c. 579, § 2, which provides that said court shall have jurisdiction to hear, try, and determine civil actions at law where the amount in controversy does not exceed the sum of $1,000, excepting causes involving title to real estate, and that it shall not have jurisdiction of actions for divorce nor of any action where the relief asked for in the complaint is purely equitable in its nature. L. 1927, c. 410, § 1, provides for the taxing of costs and disbursements in actions in said court. It provides as follows:

"Costs are allowed the prevailing party in actions commenced in said municipal court as follows:

"To the plaintiff, upon a judgment in his favor, upon a trial upon the merits, when the amount thereof, or value of personal property recovered exclusive of costs and disbursements, exceeds fifty ($50) dollars, and is less than one hundred ($100) dollars, five ($5) dollars.

"To the defendant, when judgment is rendered in his favor upon the merits, after a trial of an issue of fact, when the amount claimed in the complaint, or value of personal property in replevin, is less than one hundred ($100) dollars, five ($5) Dollars.

"To the plaintiff, upon a judgment in his favor of one hundred ($100) dollars or more, or in actions of replevin when the value of the property is one hundred ($100) dollars or more, when no issue of fact or law is joined, five ($5) dollars when an issue is joined, ten ($10) dollars.

"To the defendant, when the amount claimed in the complaint is one hundred ($100) dollars or more, upon discontinuance or dis-

missal, five dollars ($5) ; when judgment is rendered in his favor upon the merits, ten ($10) dollars."

The plaintiff was not the prevailing party and was not entitled to recover costs and disbursements upon entry of judgment if ordered in accordance with the findings of fact. There was no money recovery and he was not legally the prevailing party.

It is not the province of this court to make or amend findings of fact (1 Dunnell, Dig. [3 ed.] § 434) nor can we assume facts to be proven except in those rare cases where they are conclusively established. Breen v. Cameron, *supra*. Since it was clearly error to deny the owner the right to testify as to the value of the automobile of which he was the owner, and since the testimony as to value may have been unduly restricted, generally, under the rules applicable in actions for deceit, the interests of justice will be best served in this case by granting a new trial.[7]

We have stated the measure of damages applicable in an action for deceit in this state. Whether or not plaintiff may prove recoverable damages at another trial remains a question of fact to be determined at a new trial upon all the issues.

Reversed and a new trial granted.

[7]Thayer v. Duffy, 240 Minn. 234, 63 N. W. (2d) 28; Gilloley v. Sampson, 203 Minn. 233, 281 N. W. 3; Erickson v. Minnesota & Ontario Power Co. 134 Minn. 209, 158 N. W. 979; Jacobson v. Brasie Motor Car Co. 132 Minn. 417, 157 N. W. 645.