## SHROYER v. BASH ET AL.

PRACTICE.—*New Trial.*—*Assignment of Error.*—*Supreme Court.*—Matter which is merely cause for a new trial is not assignable as error, on appeal to the Supreme Court.

ARBITRATION.—*Revocation.*—After arbitrators have commenced their hearing of a cause submitted to them, under the statute of this State, (2 R. S. 1876, p. 317,) neither party can revoke his submission.

SAME.—*Nature of Revocation.*—Where the agreement of submission of a cause to arbitration is in writing, a revocation of such submission, to be valid, must also be in writing.

SAME.—*Action upon Arbitration Bond.*—*Damages.*—*Measure.*—The measure of damages recoverable in an action upon an arbitration bond is the amount of the judgment confirming the award, with interest and costs, not exceeding however the penalty of the bond.

SAME.—*Award.*—*Validity.*—*Can not be Attacked.*—The validity of such award can not be impeached or called in question, in such action.

SAME.—*Objections to Award.*—*When made.*—All valid objections to an award must be duly presented according to the provisions of such statute at the time when such award is presented for confirmation by the proper court.

SAME.—*Action for Award.*—*When Maintained.*—An action on an arbitration bond, to recover the amount of the award, can not be maintained, until such award has been duly confirmed by the proper court.

SAME.—*Award.*—*Confirmation of.*—A statutory award in this State against a party is not a valid claim against him, until it has been duly confirmed by the proper court.

SAME.—*Pleading.*—*Complaint.*—The complaint in an action upon an arbitration bond, to recover an award, must aver that such award has been duly confirmed.

From the Huntington Circuit Court.

*B. F. Ibach* and *G. W. Stults*, for appellant.

*L. P. Milligan, J. C. Branyan, C. W. Watkins, H. B. Sayler* and *J. B. Kenner*, for appellees.

Howk, J.—The appellant, as plaintiff, sued the appellees, as defendants, on an arbitration bond, in the court below.

In his complaint, the appellant alleged, in substance, that on the 24th day of June, 1874, the appellees Henry and Albert W. Bash agreed with the appellant to submit to Jehu Swaidner, Calvin B. Richards and William W. Callison, as arbitrators, certain matters of difference between the appellant and said appellees, as set forth in their agreement of submission, a copy of which was filed with, and made a part of, said complaint; that, on the same day, the said appellees Bash and Bash, with their co-appellees, Martin A. Gardner and Aaron Rose, as their sureties, by their writing obligatory, a copy of which was filed with, and made a part of, said complaint, agreed, in the penal sum of one thousand dollars, to faithfully perform and abide by the decision of said arbitrators; that said arbitrators met on the 10th day of August, 1874, after being duly sworn, the appellant and the appellees Bash and Bash being then and there present, and on the 17th day of August, 1874, made their award in writing, by which they awarded that the appellees Bash and Bash should pay the appellant the sum of one thousand seven hundred and one dollars and sixty-three cents; that, within fifteen days of the signing of said award by the said arbitrators, a copy of their award as made by them was delivered to each of said parties to said submission by one of said arbitrators; that the appellees Bash and Bash did not carry out their said agreement, and did not abide by and perform the said award; and that they did not pay, though the same was demanded, the sum awarded, or any part thereof, to appellant's damage in the sum of three thousand dollars.   Wherefore, etc.

It appears from the agreement of submission, which was made a part of the complaint, that " all matters of controversy " existing between the appellant and the appellees Bash and Bash, " arising out of their live-stock

partnership dealings, and all matters relating thereto, commencing October —, 1873, and ending April 3d, 1874, by mutual consent," were "submitted to Jehu Swaidner, Calvin B. Richards and William W. Callison as arbitrators, for final settlement, and that the same be made the rule of the Huntington Circuit Court, Huntington county, Indiana."

The appellees demurred to appellant's complaint, for the alleged insufficiency of the facts therein to constitute a cause of action, which demurrer was overruled by the court below, and the appellees excepted to this decision.

The appellees answered the appellant's complaint in three paragraphs.

In the first paragraph of their answer, the appellees admitted that they executed the bond, as alleged in appellant's complaint, and that they, by agreement, submitted their case to the arbitrators named in said complaint; but that the arbitrators, and more particularly one of them, Jehu Swaidner, acted so corruptly and conducted the hearing in such a manner as to prevent any thing like a fair hearing, he having control over the umpire or third arbitrator; that said Jehu Swaidner acted as an attorney on the side of the appellant, in working up his case, and was very deeply interested, insomuch that his prejudice and interest plainly swayed his judgment; that the appellees, seeing their interest was suffering from the course of said arbitrators, and that they could not obtain justice from said court, at the time openly announced their withdrawal from said arbitrators, and then and there announced to said arbitrators that they revoked their submission, and withdrew from said arbitration; that said arbitrators, under protest of one arbitrator, proceeded to, and did, make up a pretended award, and said award was the same as the one then made a rule of the court below; and the appellees said, that, on account of the said corrupt acts of said arbitrators, they withdrew, and therefore they prayed judgment for costs and all proper relief.

The second paragraph of appellees' answer was a general denial; and the third paragraph was a special defence, setting up affirmative matter in bar of this action.

The appellant demurred separately to the first and third paragraphs of appellees' answer, for the alleged insufficiency of the facts in each of said paragraphs to constitute a defence to this action. The court below overruled the demurrer to the first paragraph, and to this decision the appellant excepted; and the court sustained the demurrer to the third paragraph of said answer, and to this latter decision the appellees excepted.

The appellant replied, by a general denial, to the first paragraph of the appellees' answer. And the issues joined were tried by a jury in the court below, and a verdict was returned for the appellees. For written causes, the appellant moved the court below for a new trial, which motion was overruled, and the appellant excepted to this decision. And judgment was rendered on the verdict by the court below.

The only alleged errors of the court below, properly assigned by the appellant in this court, are these:

1st. In overruling the appellant's demurrer to the first paragraph of appellees' answer; and,

8th. In overruling appellant's motion for a new trial.

The alleged errors numbered from two to seven, both inclusive, are merely causes for a new trial, being errors of law occurring at the trial.

Causes for a new trial are not assignable, as such, as errors, in this court; and if they are assigned here as errors, they present no questions for our consideration, and will not be considered. This has long been the practice of this court, and is now so well established that it needs no citation of authorities in its support.

The first alleged error, assigned by the appellant, is the decision of the court below in overruling the appellant's demurrer to the first paragraph of the appellees' answer. It would seem, from the averments of this first paragraph

of answer, that the appellees intended therein and thereby to set up at least two supposed defences to the appellant's action, to wit: 1st. A revocation by the appellees, before the award, of the submission to arbitration; and, 2d. Such evident partiality or corruption in one of the arbitrators as would prevent the rendition of any judgment on the award.

We will consider separately these two intended defences, and determine whether either or both of them have been stated by appellees, in this paragraph of answer, in such manner as to constitute a good defence to appellant's cause of action.

1. The arbitration proceedings, which underlie the appellant's cause of action, as stated in his complaint, were begun and had under, and in an intended conformity with, the provisions of "An act relative to arbitrations and umpirages," approved February 3d, 1852. 2 R. S. 1876, p. 317. The first question presented for our consideration by the first paragraph of appellees' answer is this: Can either of the parties to a statutory arbitration, at any time before or during the hearing of the cause, revoke his submission to arbitration?

This is a new and important question, and, so far as we are aware, one that has never been presented to nor considered by this court. At common law, an agreement to submit a pending controversy to an arbitration was an executory contract, and was revocable until executed by an award. *Vynior's Case,* 8 Coke, 162; S. C., 1 Brownl. 62; *Milne* v *Gratrix,* 7 East, 608.

The common law, and the acts of Parliament in aid thereof, prior to the fourth year of James I., with certain specified exceptions, which are of a general nature and not local, and not inconsistent with the constitution of the United States or of this State, or the acts of Congress or statutes of this State, have always been, and still are,

the recognized law of this State.  1 R. S. 1875, p. 605, Chapter 161.

Our statute, before cited, relative to arbitrations and umpirages, makes no provision whatever for, and does not seem to contemplate, as we construe it, any revocation of any agreement of submission to arbitration, at any time. The statute makes ample provision. however, as it seems to us, for a full and fair trial by the arbitrators of the matters submitted to them.  It requires the arbitrators to be first sworn for the faithful, fair and just performance of their duties; it directs that the opposite party and the arbitrators shall have at least ten days' written notice of the time and place appointed for the meeting of the arbitrators; it provides for the compulsory attendance of witnesses; and it declares the imperative duty of all the arbitrators to meet together and hear the proofs exhibited and the allegations of the parties.  It also provides for the ascertainment of the fees and costs incident to the arbitration, and for the service of a copy of the award and costs on each of the parties, within fifteen days after the award has been signed.

The 16th section of said statute provides as follows:

" Sec. 16.   In all cases where an award or umpirage shall be presented to any court of record for a judgment to be entered thereon, whether the reference shall have been made by submission of parties as aforesaid, or by rule of court, the adverse party may show for cause against the rendition of said judgment any of the following grounds:

"*First.*   That such award or umpirage was obtained by fraud, corruption, partiality, or other undue means; or that there was evident partiality or corruption in the arbitrators or any of them.

"*Second.*   That the arbitrator or arbitrators [was or] were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence material and pertinent to the controversy,

or any other misbehavior by which the rights of any party shall have been prejudiced.

"Third. That the arbitrator or arbitrators exceed his or their powers, or that he or they so imperfectly executed them that a mutual, final, and definite award on the subject-matter submitted was not made." 2 R. S. 1876, p. 321.

It seems very clear to us, from these provisions of our statute relative to arbitrations and umpirages, that they are utterly inconsistent with the assumed right or power of any of the parties to a statutory arbitration to revoke the agreement of submission, at any time after the arbitrators have been sworn and entered upon the hearing of the subject-matter submitted to them. For every reasonable and sufficient ground for any such revocation, the 16th section, before cited, of our statute affords a full, complete and ample remedy; and it can not be supposed, that the law would tolerate such a revocation without cause, upon the mere whim or caprice of any of the parties to the agreement of submission.

The conclusion we have reached on this point, in the case now before us, is in strict harmony with the doctrine laid down by the Supreme Court of Ohio, in the case of Carey v. The Commissioners of Montgomery County, 19 Ohio, 245. In the State of Ohio, as in this State, the common law of England, except as the same may be contravened by constitutions, statutes, etc., is the law of the land. In that State, also, there was a statute providing for and regulating arbitrations, the provisions of which, though very similar to, were not so full and explicit as, those of our statute. Under these circumstances, it was held by the Supreme Court of Ohio, in the case cited, that none of the parties to a statutory arbitration had any right to revoke the agreement of submission, after the arbitrators had been sworn.

In the case at bar, it appears, from the averments of the first paragraph of the answer, that the ap-

pellees attempted to revoke their submission, during the hearing of the cause by the arbitrators. We are satisfied that such a revocation, in a statutory arbitration such as the parties had agreed to, was not authorized by the law of this State; and, therefore, we hold that such a revocation did not constitute a valid defence to the appellant's cause of action, as stated in his complaint.

One other objection is suggested to the alleged revocation, as stated in the first paragraph of the appellees' answer, which we will briefly notice. It appears, from appellant's complaint, that the agreement of submission was a written instrument, executed by the parties under their hands and seals; and this was not controverted in or by the first paragraph of appellees' answer. As we have seen, either party might, at common law, revoke the submission at any time before the award. But, while this was so, it was also the law, that the revocation must be by authority equal to that which made the submission, and that a submission by deed must be revoked by deed. In accordance with this doctrine, it was held by this court, in the case of *The Madison Insurance Co.* v. *Griffin*, 3 Ind. 277, that the board of directors of the appellant having made the submission to arbitration, its president and secretary, although authorized by law to carry on its business without the presence of the directors, could not, under that authority, revoke the submission. It seem to us a fair corollary of this doctrine, that where, as in this case, the agreement of submission is shown to have been a written instrument, any revocation thereof, to be valid, must be also a written instrument. Yet it does not appear, from the averments of the first paragraph of appellees' answer, that the alleged revocation of the submission was in writing, in the case now before us.

2. We come now to the consideration of the second defence, which the appellees apparently intended to set up in the first paragraph of their answer, as a bar to the appellant's action, and that was, such evident partiality

or corruption, in one of the arbitrators, as would prevent the rendition of any judgment on the award. In this case, the appellant did not seek to obtain the rendition of any judgment on the award of the arbitrators; but, in lieu thereof, he commenced this action against the appellees, the parties to the award and their sureties, on their arbitration bond. The bond sued upon was a penal bond, conditioned, as required by the statute, that the appellees Henry and Albert W. Bash should abide by and faithfully perform the award of the arbitrators named in said bond. In such a suit, the measure of the liability of the obligor in such a bond, to the obligee, would be the judgment of the proper court on the award of the arbitrators, with interest on such judgment and costs, not exceeding, however, the penalty of the bond. In an action on an arbitration bond, executed in an arbitration under and in conformity with the provisions of our statute in relation to arbitrations and umpirages, the validity of the award can not be impeached or called in question; and, therefore, it seems to us, that the alleged partiality or corruption of one or more of the arbitrators, in a statutory arbitration, would not constitute a valid defence to an action properly brought on the arbitration bond. Whether or not this action was properly brought, is a question we will determine when we come to the consideration of the appellees' cross-errors.

Upon the first error assigned by the appellant, our conclusion is, that the facts stated in the first paragraph of the appellees' answer, for the reasons we have given, were not sufficient to constitute any defence to the appellant's action, if such action had been properly brought.

We pass over the questions presented by the second alleged error, assigned by the appellant, as of but little importance, and having no bearing whatever upon the proper decision of this cause.

The appellees have assigned, in this court, as a cross-error, the decision of the court below in overruling their

demurrer to the appellant's complaint.  This cross-error presents for our consideration this important question:

In a statutory arbitration, where an award has been made, " if either of the parties shall fail or refuse to comply with such award," can " the other party," in the first instance, and without having filed the award in the proper court and obtained a rule and judgment thereon, as provided by the statute, bring an action on the arbitration bond to force a compliance with the award?

At common law, in such a case, a party had his choice of remedies, and as to the order in which he would pursue them; that is, he might sue, in the first instance, either upon the award or upon the arbitration bond.

It seems to us, however, that, under a fair and reasonable construction of our statute relative to arbitrations and umpirages, the first remedy of a party, who seeks the enforcement of a statutory award, is the proceeding authorized and provided for by the terms of the statute, to wit, by a rule against the adverse party and a judgment on the award.

It is manifest, we think, that such was the legislative intent in the enactment of said statute, from the fact that the adverse party, in such a proceeding, is fully authorized and permitted, in and by the 16th section, before cited, of said statute, to show every just and reasonable cause against the rendition of any judgment on the award; while, in and by the 17th section of said statute, ample provision is made for modifying or correcting the award, in the same proceeding.  2 R. S. 1876, p. 322.  In the 18th section of the statute, it is provided, that, in this same proceeding, " The court shall hear the proofs and allegations of the parties, to invalidate and sustain such award;" and that, upon such hearing, the court may vacate, modify and correct, or confirm the award.  2 R. S. 1876, p. 323.

Under these provisions, it is clear to our minds, that a statutory award must be regarded as merely *in fieri*, un-

Shroyer *v.* Bash *et al.*

til it has the sanction of, and is confirmed by, the proper court on the hearing, in the proceeding provided by the statute for that purpose. Until such confirmation of the award, it is imperfect and incomplete, and may or may not be a valid award. The award, called for by the provisions of our statute, is an award confirmed by the proper court, in a proper proceeding for that purpose; and this is the award, which the parties execute bonds with condition to abide by and faithfully perform. In our opinion, under a fair construction of the entire statute, an action can not, and ought not to, be maintained on a statutory arbitration bond, for the enforcement of the award, until such award, in a proper proceeding for that purpose, has been confirmed by the judgment of the proper court. From this decision, of course, it follows logically and legally, that, in a complaint on such an arbitration bond, it must be averred, *inter alia,* that the award of the arbitrators, in a proper proceeding for the purpose, had been confirmed by the judgment of the proper court.

In the case at bar, the appellant's complaint did not contain any such averment; and, therefore, we hold that the court below erred in overruling the appellees' demurrer to said complaint.

The judgment of the court below is reversed, the appellant to pay one-half and the appellees to pay the residue of the costs, and the cause is remanded, with instructions to sustain the appellees' demurrer to the appellant's complaint, and for further proceedings in accordance with this opinion.