CHARLES FRENCH v. LINDH-GUSTAFSON-KLOPFER COMPANY, INC.[1]

March 3, 1944.

No. 33,510.

[1]Reported in 13 N. W. (2d) 479.

*Joseph J. Granbeck* and *Lyle Pettijohn,* for appellant.
*Fred A. Curtis,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action to recover additional wages claimed to be due plaintiff for services rendered defendant. The jury returned a verdict in his favor. Defendant's alternative motion for judgment or a new trial was denied and judgment subsequently entered for plaintiff. The appeal is from the judgment.

On or about August 17, 1939, plaintiff commenced working for defendant corporation, then engaged in the construction of an interceptor sewer for the city of South St. Paul, under a contract governed in part by regulations of the federal Public Works Administration (hereinafter called PWA). His salary was fixed at 29.7 cents per hour. The regulations referred to required a wage for pumpmen on this work of $1.20 per hour. Plaintiff's action is based on the claim that his services on the work were those of a pumpman and that he should have been paid on the basis of $1.20 per hour as provided in said regulations. He seeks to recover the difference in the two wage rates for the full period of his employment.

Plaintiff testified that at the time of his employment he had a conversation with John D. Firehammer, defendant's foreman, who

advised him that "the pumps were the important part of the job there for the nightman," and that he was asked whether he knew anything about pumps. He replied that he was a licensed engineer and had fired for approximately 25 years.

After his employment commenced he was turned over to John Antl, designated as defendant's "afternoon pumpman" on the project. Antl showed him where the pumps were stationed, what they were supposed to do, and what plaintiff was supposed to do with them. He instructed plaintiff, according to the latter's testimony, that some of the pumps had to be run for one and one-half hours and then closed down for three or four hours, as the water did not come in fast enough to permit constant usage. Antl further explained to him how the pump bearings were cooled; how to remove small cinders and other dirt therefrom; how to watch the gauge and determine where air was coming through; how to feel the pipes and determine whether they were getting air; and instructed plaintiff to call him if anything happened to the pumps or if they stopped.

In connection with his actual duties, plaintiff testified that "if one [pump] stopped I tried to start it and I generally did"; that he "went on the job and took care of the engines"; that he would "walk up and down there and watch the pumps, engines, and keep them in gasoline, oil"; and that "every two and one-half hours" he put gasoline in the small pump. He related how he discovered a damaged belt on one of the engines and how he assisted in replacing it. He testified that on a subsequent occasion Mr. Firehammer had advised him to "keep that pump going tonight if you have to camp right beside it, don't let that thing stop."

He testified further that he was the only pumpman on the job at night, or the only man who had any connection with the pumps at that time; that in the case of a pump operating out of a manhole he would have to go down into the sewer and clean the stuff away from under the hose if it did not have a screen on; and that he went down so to clean the pumps on an average of every other night. He related that on one occasion when one of the small en-

gines stopped he undertook to start it again and finally succeeded. He presented the testimony of additional witnesses who had observed him working on the pumps on various occasions while employed by defendant.

He testified that he was required to work 12 hours each night, seven nights a week, for which he was paid $25 per week, an average of 29.7 cents per hour, and that he accepted this sum each week and did not make any claim for additional sums until after his employment ceased. His total claim for overtime based on the actual hours spent and the difference in the wage rate between what he was receiving and the wage rate for a pumpman, to wit: $1.20 per hour specified in PWA regulations, amounted to $975.24 for the total period he was employed on this project.

Defendant submitted testimony that plaintiff had been employed as a night watchman at an agreed salary of $25 per week, that he was not a pumpman, and that he had no instructions and performed no services connected therewith. Defendant's foreman admitted that plaintiff had been instructed to keep the pumps filled with gasoline, and how to fill them, and that he had been employed because of his previous experience in a place where it was necessary to fill pumps with gasoline. He further testified that by union standards a night watchman was not permitted to connect or disconnect pipes, clean carburetors, or touch tools or clean the debris from the pumps.

At the outset of the trial counsel for both parties stipulated that under PWA regulations, which applied to the original contract, pumpmen were required to be paid $1.20 per hour, while a watchman under such regulations was to be paid 29.7 cents per hour, and the case was tried and submitted to the jury on that theory. Neither the contract nor the PWA regulations were offered or received in evidence at the trial other than by virtue of such stipulation and the admission of defendant's secretary that the contract was made under such PWA regulations.

At the close of the testimony defendant moved for a directed verdict "on the grounds that the plaintiff has failed to establish

any case justifying any submission to the jury for its consideration, under the pleadings as submitted in the action." The motion was denied, and the court instructed the jury on the general issues formulated by the pleadings. Included in the court's instructions was the following:

"Now, an important question and the important question for the jury to decide is—was Mr. French employed and did he perform the duties of a watchman only or did he, under instructions from the defendant, perform more than the duties of a watchman, that is, duties of a pumpman.

\* \* \* \* \*

"The generally accepted meaning can only be changed when the proof shows a uniform use of the word in a particular business or trade in a sense entirely different from its general meaning, a use so general that all persons dealing in respect to the subject must be presumed to have known and to have contracted with reference to that customary usage.

"The burden of proof is upon the defendant company to show by a fair preponderance of the evidence that the customary usage of the word includes the additional duties, if any there are, which were imposed upon plaintiff in addition to the duties of a watchman in its generally accepted sense of one who watches property.

"The burden of proof is upon the plaintiff who claims to have been a pumpman to prove by a fair preponderance of the evidence that he was a pumpman.

"There is no generally accepted meaning or legal meaning of the word 'pumpman' applicable generally to this trade, but you may determine from all the evidence in this case whether plaintiff was a pumpman.

"Therefore, on the issue of whether the wage should be the 29.7 cents per hour or the $1.20 per hour, if you find by a fair preponderance of the evidence that plaintiff French was employed to and did perform the duties of a pumpman as you find such duties to be, your verdict will be for the plaintiff in the sum of $975.24 with interest thereupon from the 14th day of November, 1939.

"On the other hand, if you do not find by a fair preponderance of the evidence that plaintiff French was employed to and did perform the duties of a pumpman, your verdict will be for the defendant."

No exception was taken to the court's instructions by either counsel, and no additional instructions were requested by them. On May 21, 1940, the jury returned a verdict in favor of plaintiff for the amount indicated, plus interest. On August 12, 1940, prior to the hearing on defendant's alternative motion for judgment or a new trial, hereinbefore referred to, it was stipulated between counsel that the contract between the city of South St. Paul and defendant, including the PWA regulations, be made a part of the record. Portions only of the contract and PWA regulations are printed in the record. Aside therefrom, neither the contract nor the PWA regulations, or any copy thereof, were filed or are before us here.

Defendant's motion for a new trial was based in substance on the grounds (1) that the court erred in denying its motion for a directed verdict; (2) that the verdict was not justified by the evidence and rendered under the influence of passion and prejudice; and (3) errors of law occurring at the trial. No error was assigned as to the terms of the aforesaid contract or the PWA regulations.

In a memorandum attached to the order denying said motion, the court stated:

"The court submitted to the jury the generally accepted and legal definitions of watchman and placed the burden upon defendant to show a uniform use of the word in the particular business, a use so general that all persons dealing in respect to the subject might be presumed to have known and contracted with reference to such customary usage.

\* \* \* \* \*

"The court suggested to counsel, in the absence of the jury, that the court submit the matter under a *quantum meruit*, rather than on the issues stated in the pleadings, but as the court recalls both

counsel desired submission in such form that plaintiff recover the stipulated balance or none at all.

"Defendant saw the chance of defeating all recovery.

"Plaintiff saw the chance of full recovery.

"Having sought the opportunity and lost, the loser is not in a position to now complain.

\* \* \* \* \*

"\* \* \* it has been held that where counsel agree to a rule as good law and the court so submits, without disapproving of it before the jury, the verdict will not be disturbed.

\* \* \* \* \*

"Counsel for defendant \* \* \* in setting out in his brief the situation, which the court quotes, as defendant's view [states]:

" 'No criticism is directed at the court for the charge given the jury, for the court gave counsel opportunity in advance to pass on the instructions, and counsel for defendant took the position that it was either all or none.' "

On appeal defendant asserts: (1) Under the PWA regulations involved the trial court did not have jurisdiction; (2) the case should have been submitted on a *quantum meruit* basis; (3) the verdict is not justified by the evidence.

■ The PWA regulation, which defendant now asserts bars the court's jurisdiction, is as follows:

"CLAIMS AND DISPUTES PERTAINING TO CLASSIFICATION OF LABOR employed on the project under this contract shall be decided by the Owner; Provided, That if the parties to the dispute so agree and if the owner also agrees, the parties concerned may submit such claims and disputes to the Federal Emergency Administrator of Public Works for decision by the Board of Labor Review of the Federal Emergency Administration of Public Works."

As previously stated, the above provision was not before the court or jury at the time of trial. It appears, however, that said provision, at best, was merely a condition precedent to the exercise of the right to sue, and that the parties have waived their rights

thereunder—the plaintiff by instituting this action and the defendant by appearing therein to deny liability and consent to a trial of the issues on the merits. It has frequently been held that parties to agreements with similar provisions may waive them and settle their differences in the courts, and that a party answering on the merits and tendering the controversy to the court thereby joins in waiving such a provision as a condition precedent to litigation. Jones v. Fox Film Corp. (5 Cir.) 68 F. (2d) 116; *The Belize* (D. C.) 25 F. Supp. 663; Lewis-Hall Iron Works v. Bethel African M. E. Church, 242 Mich. 126, 218 N. W. 760; Quast v. Guetzkow, 164 Wis. 197, 159 N. W. 810; Clark v. Fleischmann Vehicle Co. Inc. 187 N. Y. S. 807; Meyer v. Berlandi, 53 Minn. 59, 54 N. W. 937; Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511.

Here, at no time either in the trial of the action or on the motion for new trial, was any reference made to the provision involved. At the trial, defendant's counsel stipulated with counsel for plaintiff as to the issues presented for determination without reference thereto. Defendant's answer contained nothing to indicate its reliance thereon as a defense. The trial proceeded on the basis of the pleadings and the stipulation of counsel referred to. On defendant's motion for a new trial, no error was assigned because of the provision now under consideration.

From the foregoing it is clear that this issue is presented now for the first time. The scope of review here is limited to the issues raised by the pleadings or litigated by consent at the trial and considered and determined there, in accordance with the theory on which the action was conducted, both as regards the law and the facts. 1 Dunnell, Dig. & Supp. § 384, and cases cited. It follows, under the doctrines above referred to, that the scope of our review must be limited to the proceedings before the trial court without reference to the above provision in the regulations.

■ A further clause in the regulations limits pumpmen to 40 hours work per week. Defendant now claims that this provision restricts plaintiff's compensation as a pumpman to a 40-hour week

during his period of employment. This contention likewise is presented here for the first time. It must fail of consideration for the reasons held applicable to the provision treated in subdivision 1 of this opinion.

■ It is urged that the court erred in not submitting the case to the jury on a *quantum meruit* basis, since, it is asserted, the jury might have found that plaintiff had served as a watchman for a portion of the time involved and hence was not entitled to full compensation on the rate applicable to pumpmen. The trial court's memorandum indicates that it suggested submission of the case on a *quantum meruit* basis, but that both counsel rejected this and "desired" the issues submitted on the basis of "all or none," and the court proceeded under counsels' agreed theory. Accordingly, this became the correct rule of law applicable to the facts, and it is too late now for defendant's counsel to claim error in connection therewith. O'Connell v. Holler, 148 Minn. 454, p. 457, 182 N. W. 617.

■ There would seem to be sufficient evidence to sustain the jury's finding that plaintiff's services were those of a pumpman and hence that he was entitled to compensation at the rate of $1.20 per hour under the pleadings and stipulation of counsel at the trial. His testimony and the testimony of his witnesses as outlined herein form ample basis for the jury's finding in this respect. In addition, the admissions of defendant's foreman relating to instructions given plaintiff with reference to the pumps and relating to union rules pertaining to pumpmen corroborate plaintiff's testimony and afford further support for the jury's finding on this issue. Under the rule governing us on fact questions, since there is evidence which reasonably sustains the findings, the judgment must be affirmed.

Affirmed.