JOHN A. KNUTSON v. FLOYD E. LASHER AND ANOTHER.[1]

.May 4, 1945.

No. 33,930.

[1]Reported in 18 N. W. (2d) 688.

*O. A. Brecke* and *E. T. Chesnut,* for appellant.
*Best, Flanagan, Rogers, Lewis & Simonet,* for respondents.

PETERSON, JUSTICE.

This appeal involves disputed questions between defendants as the owners of certain land and plaintiff as a building contractor who erected a building thereon under contract with them. The action was brought by the contractor on two causes of action: (1) One to foreclose a mechanic's lien for $10,981.71, the balance claimed to be due on the contract and for extras; and (2) the other to recover $700 claimed as expenses incurred by him in connection with an abortive arbitration proceeding from which the owners withdrew. No point is raised that there was a misjoinder of causes of action (see, 40 C. J., Mechanics' Liens, § 574, p. 419), or that the amount recoverable on the second cause of action mentioned is not lienable. The questions raised here concern the right of defendants to deduct from the balance due plaintiff the amount that would compensate them for defects in the job caused by plaintiff's faulty performance, the sufficiency of the evidence to show such defects, and the liability of defendants for interest on the amount found to be due plaintiff.

Plaintiff contracted with defendants to erect for the contract price of $83,585 a warehouse and office building according to plans and specifications. These, so far as here material, provided for a one-story building 149 feet by 280 feet in size, with concrete slab floors and roof and brick walls. One of the first-floor slabs rested upon the ground. The other was over a basement 149 feet by 100 feet. The latter was to be eight and one-half inches thick. The specifications provided: (1) That the topping of the floors should be screeded to "a true and even surface," floated "to close all voids

and hollows"; that they should be steel-trowelled so as to be "free from depressions and trowel marks"; and that the ramps and sidewalks should be wood-trowelled so as to be "free from depressions"; (2) that the roof slab should be screeded and top surface should be "level" and "free from depressions"; that the "roof slab shall be pitched to elevations shown and leader heads shall be depressed into slab to prevent water pockets standing on roof surfaces"; and "concrete slab shall be depressed in area approximately four feet square 2 to permit good drainage around leader heads"; that the roof slab should be covered with felt and pitch roofing material; and (3) that the floor slabs in the basement "shall be sloped to floor drains where drains occur."

The building was intended, as the contractor well knew, to be used by defendants in operating a wholesale linoleum and carpet business. It was important to them to have it erected according to the plans and specifications in order to serve its intended purpose.

Defendants claimed that in numerous respects plaintiff had caused defects in the building by faulty construction. They claimed that the floors were uneven and had depressions in them. There was evidence to show that there were seven or eight depressions in the showroom caused by planks two inches thick and eight inches wide. In the cutting room, there were additional plank depressions, and the floor was so uneven in places that rolls of linoleum could not be stood on end without danger of their falling. There was considerable cracking and pitting all over the suspended slab. Plaintiff attempted to remove some of the uneven places by grinding the floor surface level with a carborundum machine. In some places the floor was ground down to the coarse aggregate below, with the result that when the floor was used there was considerable dusting. There were over 80 places where workmen had chipped the floor in removing the scaffolding and forms.

The roof did not drain, because of a large depression in the roof slab. Water stood in the depression, which plaintiff testified was 32 by 81 feet and which, according to defendants' evidence, was

50 by 100 feet in area and two and one-half inches in depth. Defendants claimed that in order to make the job comply with the specifications it was necessary to remove several squares of the roof and to put on a new cover over the part rebuilt. Plaintiff claimed that the water was beneficial to the roof, but that it could be made to drain by applying two or three layers of felt and pitch.

The boiler-room floor, instead of having a pitch that would cause it to drain toward the drain opening, had a slope which caused the water to stand in front of the boiler. Plaintiff claimed that the defect, if any, could be removed by cutting out a part of the surface of the floor between the boiler and the drain openings. Defendants contended that the only way to make the job workmanlike was to take out the entire floor and put in a new one with proper pitch.

There were other defects in the installation of doors, the front entrance, and windows, amounting to $132. No point is made concerning the allowance of this item.

The trial court found that the floor slabs were so faultily constructed that the defects were irremediable and that defendants should be allowed the sum of $2,700 as the difference between the value of the building as it would have been if plaintiff's work had been according to the contract and its value as actually constructed; that defendants were entitled to $532 as the reasonable cost of reconstructing and repairing the defective parts of the roof; $200 for the reasonable cost of reconstructing the boiler-room floor; and $132 for the undisputed items mentioned. The court held that plaintiff was entitled to recover $83,585, the contract price, and the following items: $1,750.51 for extras; $400 for attorney's fees; $194.75 for disbursements; $167.80 for attorney's fees and disbursements in connection with the abortive arbitration, making a total of $86,098.06; that defendants were entitled to credit for the progress payments, amounting to $74,391.30, and to deductions for defective construction as follows: $2,700 for concrete slab; $532 for roof; $200 for boiler-room floor; $132 for cost of other repairs, making a total of $77,955.30; and that the balance due plaintiff

was $8,142.76, for which he was awarded a mechanic's lien, which was ordered foreclosed in the manner provided by law.

No interest was allowed on the balance found to be due plaintiff, for the reason given by the trial court "that the building contract * * * expressly provides that final payment thereunder shall not be due until thirty (30) days after completion of the contract in accordance with the terms thereof, and until the architects employed shall have certified to the propriety of such payment."

The general conditions of the contract provided that the owners should be liable for payments upon certification by the architect that plaintiff had duly performed the contract; that the architect should have general supervision and direction of the work; that in the first instance he should be the interpreter of the conditions of the contract and the judge of its performance; and that in case of dispute the architect's decisions should be subject to arbitration. The contract further provided that final payment should be due 30 days after full and complete performance of the contract and certification by the architect to that effect.

The architect refused to issue a certificate of final performance. The contractor claimed that there was then due him the sum of $10,981.71. Upon the architect's refusal to issue the certificate mentioned, plaintiff demanded arbitration under the contract. The general conditions, made a part of the contract, provide for the arbitration of disputes "at the choice of either party," and that the arbitrators' decision shall be a condition precedent to any right of legal action. A board of arbitrators was selected by the parties in the manner provided by the contract. On December 14, 1942, the arbitrators convened. The parties and their counsel appeared. In order to enable the arbitrators to view the premises, the hearing was adjourned with the consent of the parties to December 16, 1942. At the opening of the adjourned meeting, after plaintiff was sworn to testify in his behalf, defendants served notice in writing upon the arbitrators and plaintiff that they had revoked the agreement for a submission to arbitration and that they refused to proceed further thereunder. Thereupon defendants withdrew from the

arbitration, and no further proceedings thereunder were had. Two days afterward, on December 18, 1942, plaintiff commenced this action to foreclose the mechanic's lien claimed by him, for which he had filed a lien statement on December 1, 1942.

The questions raised here are: (1) Whether the defendants' refusal to proceed with the arbitration barred them from asserting any claim to deductions for faulty performance of the contract by plaintiff; (2) whether the evidence sustains the finding that there were defects due to faulty performance of the contract by plaintiff; and (3) whether plaintiff should have been awarded interest upon the unpaid balance due him.

■ Plaintiff's contention that defendants are not entitled to set off against the amount due him the amount of damages sustained by them as a result of defects caused by faulty performance rests upon the proposition that, under the contract, decision by arbitration is a condition precedent to asserting a legal right of action; that the agreement to arbitrate is irrevocable; and that defendants' claimed right of setoff is the assertion of a cause of action by way of counterclaim, which is barred by reason of defendants' refusal to arbitrate. Defendants' answer to this contention is that plaintiff and they waived the arbitration provisions of the contract. This they claim they did by withdrawing from the arbitration proceedings and refusing to proceed and that plaintiff did so by bringing this action to enforce a mechanic's lien and prosecuting it to decision.

In passing, it should be observed, although it makes no difference here, that the right to such deductions is one of recoupment, not counterclaim. Peterson v. Mayer, 46 Minn. 468, 49 N. W. 245, 13 L. R. A. 72; 5 Dunnell, Dig. § 7595, note 3.

An agreement to submit disputes which may arise between parties to arbitration is irrevocable in the sense that one of them cannot revoke it over the objection of the other. Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511; Park Const. Co. v. Independent School Dist. 209 Minn. 182, 296 N. W. 475, 135 A. L. R. 59; Id. 216 Minn. 27, 11 N. W. (2d) 649. An

agreement to arbitrate may be waived notwithstanding a provision that decision by arbitration shall be a condition precedent to a right of legal action. Independent School Dist. v. A. Hedenberg & Co. Inc. *supra.*

By withdrawing from the arbitration proceedings and refusing to proceed further thereunder, defendants waived and abandoned the right to arbitrate. Anderson v. M. Burg & Sons, Inc. 170 Minn. 53, 212 N. W. 9. If the agreement for an arbitration had been revocable, defendants' withdrawal from the proceedings and refusal to proceed further thereunder would have terminated the proceedings altogether so that the arbitrators could not have made a valid award. M. & St. L. Ry. Co. v. Cooper, 59 Minn. 290, 61 N. W. 143; Holdridge v. Stowell, 39 Minn. 360, 40 N. W. 259. In that situation, plaintiff would have had no choice of remedies. If he desired to enforce his rights, his only remedy would have been to proceed by action in the courts. Where a party refuses to submit to arbitration under a revocable agreement, the other party may treat the arbitration agreement as abrogated and resort to the courts for redress the same as if no agreement to arbitrate had been made. Anderson v. M. Burg & Sons, Inc. *supra.*

Where, however, the agreement to arbitrate is irrevocable, the rule is different. In such cases, the party who has not breached the agreement has an election to proceed with the arbitration and to take an award or to bring an action in the courts. The rule is settled that, where an arbitration agreement is irrevocable and one of the parties withdraws or refuses to participate in the arbitration proceedings, the arbitrators may proceed *ex parte* at the instance of the other party and make a valid award. Glidden Co. v. Retail Hardware Mut. F. Ins. Co. 181 Minn. 518, 233 N. W. 310, 77 A. L. R. 616 (affirmed, 284 U. S. 151, 52 S. Ct. 69, 76 L. ed. 214); Itasca Paper Co. v. Niagara F. Ins. Co. 175 Minn. 73, 220 N. W. 425; Hastings v. Jones (7 Cir.) 18 F. (2d) 833; Caldwell v. Caldwell, 121 Ala. 598, 25 So. 825; Bray v. English, 1 Conn. 498; White Eagle Laundry Co. v. Slawek, 296 Ill. 240, 129 N. E. 753; Shroyer v. Bash, 57 Ind. 349; Carey v. Commrs. of Montgomery County, 19

Ohio 245; Martin v. Vansant, 99 Wash. 106, 168 P. 990, Ann. Cas. 1918D, 1147; Stiringer v. Toy, 33 W. Va. 86, 10 S. E. 26; Aitken v. Fernando, 88 L.T.N.S. 179, 72 L.J.P.C.N.S. 63, [1903] A. C. 200, 19 Times L. R. 295; Scott v. Van Sandau, 6 Q. B. 237, 51 ECL 237, 115 Reprint 92; Waler v. King, 9 Mod. 63, 88 Reprint 317; Wood v. Leake, 12 Ves. Jr. 412, 33 Reprint 156. The cases cited involved agreements to arbitrate declared to be irrevocable by statute or made so in the particular instance by making the arbitration under a rule of court. Here, the agreement to arbitrate is irrevocable under rules announced in our prior decisions. It makes no difference why an agreement to arbitrate is irrevocable so long as it is so. The consequences flowing from irrevocability are the same in all cases. In some states, the right to proceed *ex parte* in such cases is regulated by statute, requiring an order of court to do so. Matter of Bullard v. Morgan H. Grace Co. Inc. 240 N. Y. 388, 148 N. E. 559; Landreth v. South Coast Rock Co. 136 Cal. App. 457, 29 P. (2d) 225; 6 C. J. S., Arbitration and Award, § 33f.

Instead of proceeding before the arbitrators and taking an award, as he had a right to do, plaintiff brought and prosecuted this action to enforce a mechanic's lien. The bringing of the action was an election to abandon and waive his right to arbitration and to have a judicial remedy instead—a remedy of an entirely different kind from an award by the arbitrators. French v. Lindh-Gustafson-Klopfer Co. Inc. 216 Minn. 521, 13 N. W. (2d) 479; Paulsen v. Manske, 126 Ill. 72, 18 N. E. 275, 9 A. S. R. 532. It makes no difference whether the action is one for the recovery of a money judgment only, as in the French case, or one for the enforcement of a mechanic's lien, as in the Paulsen case. In either event, the bringing of the action waives the right to arbitration. In Matter of Zimmerman v. Cohen, 236 N. Y. 15, 139 N. E. 764, plaintiffs, in disregard of a contract provision to submit to arbitration, brought an action. Instead of procuring an order under the statute directing the arbitration to proceed, defendant set up a counterclaim, gave notice of trial, and procured an order for taking a deposition. The court held that plaintiffs in the first instance waived or aban-

doned the arbitration provision by bringing the action and that defendant did likewise by asserting a counterclaim instead of asserting his right to arbitration. So it is here. Plaintiff, instead of standing on his right to proceed with the arbitration proceedings, waived and abandoned them by bringing this action. Such conduct, the New York court said, is clearly inconsistent with the claim that the parties were obligated to settle their differences by arbitration. As the court said of the defendant in the Cohen case (236 N. Y. 20, 139 N. E. 766): "He consented to and acquiesced in the neglect and refusal to arbitrate. In fact he participated in the failure and neglect to arbitrate by, himself, seeking judgment in a court of law against the plaintiffs." Plaintiff, by bringing this action, abandoned and waived the agreement to arbitrate the same as defendants did. The parties' rights to assert causes of action and defenses in this action are the same as if no agreement to arbitrate had ever been made. Therefore, defendants were entitled to assert, by way of recoupment, a right to deductions for the damages resulting from plaintiff's faulty performance. The difference between this case and that of St. Paul S. D. & L. Co. v. Berkner, 137 Minn. 402, 163 N. W. 668, relied on by plaintiff, is that here there was an arbitration agreement, which the parties waived and abandoned, and that in the cited case there was no such agreement, but one rather to the effect that the contractor was not entitled to final payment except he obtain a certificate from the architect of final completion of the job and procure from the roofer a guaranty of the roof for ten years. The Berkner case has no application here.

■ In passing on the question whether the evidence sustains the findings with respect to defects caused by plaintiff's alleged faulty performance and the damages sustained by defendants as a consequence thereof, we shall not review the evidence in detail to demonstrate the correctness of the findings—it is not incumbent upon an appellate court to do so. Anderson v. Farwell, Ozmun, Kirk & Co. 217 Minn. 110, 14 N. W. (2d) 311; 1 Dunnell, Dig. & Supp. § 414. The evidence is conflicting. There is no dispute as a

practical proposition that there were depressions, plank and trowel marks, unevenness, and chipping to the floor slab; that there was a depression in the roof slab in which water stood, which according to plaintiff's version embraced an area of 32 by 81 feet and according to defendants' an area of 50 by 100 feet where the depth of the water was two and one-half inches; that the boiler-room floor did not drain; and that there were other minor defects constituting the $132 item. Plaintiff's evidence was to the effect that, notwithstanding the defects shown by the testimony of his witnesses, he had performed the contract according to its terms in a good and workmanlike manner. Defendants' evidence was to the opposite effect. The trial court found in accordance with defendants' evidence.

We think that the trial court's findings of defects and resulting damage to defendants must be sustained under the familiar rule that findings having reasonable support in the evidence, even though it is conflicting, will not be disturbed on appeal. Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312. Whether a contractor has substantially performed and the amount of damages occasioned by omissions and defects are fact questions. Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511; Snider v. Peters Home Bldg. Co. 139 Minn. 413, 167 N. W. 108; Leeds v. Little, 42 Minn. 414, 44 N. W. 309.

The finding that $2,700 should be allowed for defects in the floor slab is sustained by the testimony of one of the owners, Floyd E. Lasher, and an architect, Dale R. McEnary. Lasher's testimony was that, if the building had been constructed according to contract, its value would have been $83,000, and that as actually constructed it was from $72,000 to $73,000, and that defendants' damages were from $10,000 to $11,000. Mr. McEnary placed the respective values at $83,000 and $80,000 and the damages at $3,000. The trial court found the damages to be $2,700. The owner of property (Floyd E. Lasher was an owner) is competent to testify as to the value of the building as it would have been if constructed according to contract, its value as actually constructed, and the

damages occasioned by faulty performance of the contract. Carl Lindquist & Carlson, Inc. v. Johanson, 182 Minn. 529, 235 N. W. 267. See, Baldinger v. Camden F. Ins. Assn. 121 Minn. 160, 141 N. W. 104 (value and damage caused by fire). The architect McEnary was familiar with the values in question and competent to testify concerning them. The finding does not adopt the exact figures of any witness, but it is not necessary that it should do so. A trial court is not bound by the opinion of any witness concerning values, and its finding will be sustained if it is within the limits of the evidence as to values. Manemann v. West, 216 Minn. 516, 13 N. W. (2d) 474.

The argument concerning the allowance to defendants for remedying the defects in the roof was principally to the effect that the amount allowed was excessive. Here, again, it suffices to say that we have examined the evidence and have concluded that it sustains the finding. In this connection, plaintiff contends for a rule which we think is as mischievous as it is untenable. He argues that water standing in the depression on the roof, even if it was the result of failure to construct the roof according to contract, is no cause for complaint on the part of the owners, because it made the roof as built better than it would have been if built according to contract. The doctrine of substantial performance, under which plaintiff claims he is entitled to recover, does not confer on a contractor any right to deviate from the contract or to substitute what he may think is just as good as what the contract calls for. Where the deviation is wilful, the contractor is not entitled to recover at all. It is only where the deviations and defects are unintentional and not so extensive as to prevent the owner from getting substantially what he bargained for that the contractor is entitled to recover under the doctrine mentioned. After all, the owner has the right to specify what he wants and to obligate himself by contract to pay only for what he specifies. Ylijarvi v. Brockphaler, 213 Minn. 385, 7 N. W. (2d) 314; Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52. In the last cited case, a contractor was held not entitled to recover for building a house where the

deviations from the contract were intentional and the owner did not get substantially what he bargained for. There is not much that can be added to what Mr. Justice Mitchell there said.

Plaintiff does not press the other items. In view of that fact, we shall refrain from discussing them. The court's findings with respect to them are sustained by the evidence.

■ A further fact should be stated in connection with plaintiff's claim for interest. The general conditions, made part of the contract, provide that if the owners shall fail to pay the sum named in any certificate of the architect or award by arbitration, upon demand when due, the contractor shall be entitled to interest on the sum named at the legal rate thereof. It seems to us that the intention was that interest should not be due prior to an award by arbitration and that it should be afterward. Absent contractual provision as to the time from which interest shall be payable, the rule is that, where parties agree to submit the amount of a demand to the decision of others or a court, interest is not allowable prior to the date of the decision. Easterbrook v. Farquharson, 110 Cal. 311, 42 P. 811; Matter of Trask v. Peekskill Plow Works, 6 Hun (N. Y.) 236; McCullough v. Clemow, 26 Ont. 467; 25 C. J. S., Damages, § 52b (note 30), p. 540. Where the parties stipulate that interest shall be allowed upon an award, it seems clear beyond doubt that they did not intend it to be payable prior thereto. Here, the parties failed to obtain a decision by arbitration by reason of their having abandoned and waived the right thereto. They proceeded with the arbitration until defendants wrongfully withdrew therefrom. When plaintiff commenced this action and thereby abandoned and waived his right to proceed with the arbitration, all obligations to arbitrate were terminated, and the rights of the parties from that time became the same as if no agreement to arbitrate had ever been made. While the agreement to arbitrate was in effect, plaintiff was not entitled to sue for the balance due him (see, St. Paul S. D. & L. Co. v. Berkner, 137 Minn. 402, 163 N. W. 668, *supra*), but he was afterward. Thereupon the balance became immediately due. Interest was payable thereon from that

date, because the amount of the balance was a matter of mathematical computation by reference to the contract, the payments made, and the market value of the extras. Grand Forks Lbr. Co. v. McClure Logging Co. 103 Minn. 471, 115 N. W. 406; 2 Dunnell, Dig. § 2524. Plaintiff's claim, however, was subject to the deductions for the recoupment of defendants on account of defects caused by faulty performance. We shall assume that the amount of the deductions was unliquidated until determined below. See, Bull v. Rich, 92 Minn. 481, 100 N. W. 213, 101 N. W. 490. The rule is that, where the amount due under a contract is certain and liquidated or capable of ascertainment, but is reduced by an unliquidated setoff, interest is allowable on the balance found to be due from the time it became due or suit was commenced. Hansen v. Covell, 218 Cal. 622, 24 P. (2d) 772, 89 A. L. R. 670; Pearson v. Ryan, 42 R. I. 83, 105 A. 513, 3 A. L. R. 805. Here, as has been said, the amount became due at the time of the commencement of the mechanic's lien action. Hence, interest should have been allowed on the balance of $8,142.76 due plaintiff from December 16, 1942. The decision below must be modified to include interest.

Modified in accordance with the opinion.